**Stephanie Cherise FORD, Jeannette Messer Haynie, and Kenneth Dale Schiro, Appellants,**

v.

**The STATE of Texas, Appellee.**

Nos. 14–97–01240–CR to14–97–01242–CR.

Court of Appeals of Texas, Houston (14th Dist.).

Feb. 24, 2000.

384

Terry W. Yates, Houston, for appellants.

Keli Pool Roper, Houston, for appellees.

Panel consists of Chief Justice MURPHY and Justices HUDSON and WITTIG.

## OPINION

PAUL C. MURPHY, Chief Justice.

Stephanie Cherise Ford, Jeannette Messer Haynie, and Kenneth Dale Schiro (individually or collectively referred to as "Appellants") appeal their respective convictions of the Class A misdemeanor offense of selling an alcoholic beverage to a minor. *See* Tex. Alco. Bev.Code Ann. § 106.03 (Vernon Supp.2000). Appellants were each sentenced to two days in jail and fined $400. *See* Tex. Penal Code Ann. § 12.21 (Vernon 1994). On appeal to this court, Appellants assign fourteen points of error, contending that (1) the evidence was legally and factually insufficient to support their convictions, (2) the trial court's ruling that denied their request to question the venire following a prejudicial statement made by two of the panelists violated their constitutional and statutory rights, (3) the trial court's refusal to issue a writ of attachment for a witness violated their constitutional rights, (4) the trial court's comments made during voir dire violated their constitutional rights, (5) the trial court erred by denying their motion to quash the jury panel because of the court's prejudicial voir dire comments, (6) the trial court erred by denying their request for a mistrial based upon harmful testimony elicited by the prosecutor that violated the trial court's discovery order, (7) the trial court erred by denying their motion for new trial, and (8) the trial court erred by refusing to grant a mistrial based upon the amount of time the jury took to reach a verdict. We affirm.

### Background

An agent of the Texas Alcoholic Beverage Commission (TABC) recruited Jose Ybarra to participate in a sting operation. Ybarra was eighteen years-old. The purpose of the sting operation was to investigate whether bars located in Baytown were selling alcoholic beverages to minors. Ybarra was instructed by the TABC to enter a designated bar and attempt to purchase an alcoholic beverage.

The Cherokee Club was on the list of bars to be investigated. The Cherokee Club allows patrons to enter who are eighteen and above. A TABC agent entered the Cherokee Club to be sure it was safe for Ybarra to enter. The agent was Mario Villareal. After Agent Villareal remained inside the bar for approximately five minutes, Ybarra began to enter the bar. However, he was not allowed to enter inside the bar because his clothing did not meet the dress code. Ybarra retreated to the officers located in the parking lot and was given a collared shirt to meet the bar's dress code. Ybarra entered the bar a second time, paid a cover charge and was allowed inside. Ybarra made eye contact with Agent Villareal, who was always close by. Ybarra walked up to one of the counters inside the bar and ordered a beer. The female bartender told Ybarra it cost $1.50 and handed him the beer. The bartender did not ask Ybarra for any identification. Ybarra then walked away and met with Agent Villareal, who confirmed that the beverage that Ybarra purchased was indeed an alcoholic beverage. Ybarra then approached a male bartender and ordered a second beer. The bartender took Ybarra's money and gave him a beer. The bartender did not ask for any identification. Ybarra met with Agent Villareal again, who again confirmed the beverage was alcoholic. Ybarra then proceeded to another female bartender, who sold Ybarra a beer. She did not ask Ybarra for any identification. Ybarra met with Agent Villareal a third time and the agent again confirmed that third beverage was alcoholic.

Ybarra then exited the bar and notified TABC Agent Tracy Cox what transpired inside. Agent Cox and Baytown police officers entered the bar and arrested Appellants, the three bartenders who sold alcoholic beverages to Ybarra.

### Discussion

#### Sufficiency of the Evidence

In their first two points of error, Appellants contend that the evidence was legally

and factually insufficient to support their convictions for selling an alcoholic beverage to a minor.

■ In reviewing the legal sufficiency of the evidence, we view the evidence in the light most favorable to the jury's verdict to determine if any rational trier of fact could have found against Appellants on the essential elements of the offense beyond a reasonable doubt. *See Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *Clewis v. State,* 922 S.W.2d 126, 132–33 (Tex.Crim. App.1996). The *Jackson* standard "gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *See Clewis,* 922 S.W.2d at 133. If a reviewing court determines that the evidence is insufficient under the *Jackson* standard, however, it must render a judgment of acquittal. *See id.* This is because if the evidence is insufficient under *Jackson,* the case should have never been submitted to the jury. *See id.*

■ Section 106.03 of the Texas Alcoholic Beverage Code provides that a "person commits an offense if with criminal negligence he sells an alcoholic beverage to a minor." TEX. ALCO. BEV.CODE ANN. § 106.03(a) (Vernon Supp.2000). "Criminal negligence" is the lowest degree of culpability defined by the Texas Penal Code. *See* TEX. PENAL. CODE ANN. § 6.02(d)(4) (Vernon 1994). It is defined as follows:

A person acts with criminal negligence, or is criminally negligent, with respect to circumstances surrounding his conduct or the result of his conduct when he ought to be aware of a substantial and unjustifiable risk that the circumstances exist or the result will occur. The risk must be of such a nature and degree that the failure to perceive it constitutes a gross deviation from the standard of care that an ordinary person would exercise under all the circumstances as viewed from the actor's standpoint.

TEX. PENAL CODE ANN. § 6.03(d) (Vernon 1994); *see also* TEX. ALCO. BEV.CODE ANN. § 1.08 (Vernon 1994) (for the purpose of this code, a person acts with criminal negligence if the person acts with the mental state that would constitute criminal negligence under Chapter 6, Penal Code, if the act were an offense). In other words, a person is criminally negligent if he should have been aware of the risk surrounding his conduct, but failed to perceive it. *See Edmonson v. State,* 955 S.W.2d 472, 473 (Tex.App.-Austin 1997, no pet.). It has also been noted that criminal negligence involves "inattentive risk creation." *See Todd v. State,* 911 S.W.2d 807, 814 (Tex. App.-El Paso 1995, no pet.).

We have thoroughly examined the record of this case and, viewing it in the light most favorable to the verdict, find it legally sufficient to support the jury's verdict. First, it is not disputed that Appellants sold alcoholic beverages to Ybarra, a minor. Thus, the first element of section 106.03 was established by the evidence. Second, the jury could have rationally found that Appellants should have been aware of, but, by not checking Ybarra's identification, failed to perceive, the risk of someone under the age of twenty-one would approach them and order an alcoholic beverage. The evidence shows that Appellants were employed by a bar that allowed patrons to enter who were at least eighteen years-old. The jury could have reasonably inferred that the bar's practice creates a substantial risk that patrons under the age of twenty-one will attempt to purchase alcoholic beverages. Thus, the second element of the offense requiring the State to show that Appellants were criminally negligent in selling alcoholic beverages to Ybarra was established by the evidence. Accordingly, the State presented legally sufficient evidence to the jury to show that Appellants committed an offense under section 106.03 of the Alcoholic Beverage Code. The jury's guilty verdict is therefore based upon legally sufficient evidence.

In reviewing the factual sufficiency of the evidence, we view all the evidence in the record without the prism of "in the light most favorable to the prosecution...." *See Clewis*, 922 S.W.2d at 134. However, a reviewing court is "not free to reweigh the evidence and set aside a jury verdict merely because the judges feel that a different result is more reasonable." *See id.* at 135. We will set aside a verdict "only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust." *See id.* at 134. This Court must also determine that the jury's verdict shocks the conscience or clearly demonstrates bias before reversing on factual insufficiency grounds. *See id.* at 135.

As noted above, the State's evidence showed that each Appellant sold an alcoholic beverage to Ybarra, a minor. The testimony showed that Ybarra was eighteen years-old and had a "youthful appearance." The evidence also showed that Appellants were employed by a bar that allowed patrons under the age of twenty-one to enter. Consequently, it would have been reasonable for the jury to find that Appellants should have appreciated the risk that some minor bar patrons would attempt to purchase alcoholic beverages. The State's evidence showed that none of the Appellants requested that Ybarra produce any identification to verify that he was at least twenty-one years-old before selling him an alcoholic beverage. In sum, there was factually sufficient evidence presented for the jury to find that an ordinary person under similar circumstances would have demanded that Ybarra produce valid identification to verify he was over the age of twenty-one before selling him an alcoholic beverage.

Appellants contend, however, that the evidence demonstrated that they were not criminally negligent in selling alcoholic beverages to Ybarra. First, they contend that the risk of selling alcoholic beverages to minors was "virtually eliminated" by the policy and procedures in place at the Cherokee Club. Specifically, Appellants direct our attention to evidence in the record showing that it was the bar's policy to post a responsible person at the front entrance of the bar to check identifications of patrons. The evidence shows that when patrons enter the bar who are at least eighteen but under twenty-one, the person posted at the front entrance is required to mark each hand of the patron with a large X to distinguish them as minors. Therefore, Appellants argue, it was reasonable for them to "assume" that the age of everyone who entered the bar was checked by a bar employee prior to their entrance. They argue that because Ybarra did not have a large X on his hands, they were not criminally negligent in assuming Ybarra's identification was previously checked and that he was at least twenty-one.

The Alcoholic Beverage Code provides that it is an offense for a person to sell an alcoholic beverage to a minor. *See* TEX. ALCO. BEV.CODE ANN. § 106.03(a) (Vernon Supp.2000). Consequently, it is the sole responsibility of the person *selling* such beverages to check the identification of anyone desiring to make a purchase. The statute is clearly directed toward persons *selling* alcoholic beverages. *See id.* While policies designed to identify bar patrons as minors by persons posted at the entrance of an establishment may bear upon the issue of criminal negligence, such policies can not be relied upon to *per se* insulate persons from criminal responsibility if they sell an alcoholic beverage to a minor. If we were to adopt the position advocated by Appellants, the statute making it an offense for a person to sell an alcoholic beverage to a minor would be rendered meaningless. Therefore, the jury in this case correctly rejected the defense's theory that the prophylactic measure utilized by the bar to protect its bartenders against selling alcoholic beverages to minors was sufficient to establish that Appellants were not criminally negligent in selling such beverages to Ybarra without confirming he was at least twenty-one.

Appellants also contend that the evidence was factually insufficient because of the evidence presented showed that Ybarra appeared to be over twenty-one based upon his mature appearance. They contend, therefore, that the evidence shows they were not criminally negligent in not checking his identification to confirm his age before selling him alcoholic beverages. The jury in this case had the opportunity to view Ybarra on the witness stand and judge for itself whether Ybarra possesses a mature appearance. It was within the province of the jury to reject Appellants' contention that they were not criminally negligent in this case by not checking Ybarra's identification to confirm his age because of his alleged mature appearance. Further, assuming *arguendo* that Ybarra appeared to be over twenty-one, we are aware of no authority suggesting that such an appearance would insulate a person from criminal responsibility for selling an alcoholic beverage to someone who was indeed a minor. Likewise, Appellants have cited no authority to support such a contention.[1]

We conclude that the State presented factually sufficient evidence to the jury to show that Appellants were criminally negligent in selling alcoholic beverages to a minor. The jury's verdict is not so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. Nor does the jury's verdict shock the conscience or clearly demonstrate bias. Points of error one and two are respectively overruled.

### Voir Dire Comments by Prospective Jurors

In their third, fourth and fifth points of error, Appellants contend that the trial court's ruling that denied their post-voir dire request to question the panelists following a prejudicial statement made by two of the panelists violated their constitutional rights to trial by an impartial jury and their statutory right to effectively exercise challenges.

During voir dire, in response to a question propounded by Appellant Ford's trial counsel, one prospective juror commented, "Yeah, you work at—you work some place and a minor walks up to you and you don't card him and you give him a beer. That would be criminally negligent. You didn't do anything to check his I.D. or anything." Following that comment, another prospective juror commented, "If this is the guy, he doesn't look to me like he's not a minor, very simple, simple as that."[2] A few minutes later, the following comment was made: "I go back to my previous thing, but if this is the young man back here that they sold beer to, anybody with any common sense can tell that he needs to be checked...." The same prospective juror followed up that comment by stating, "by the looks of him just right here, they've got a problem that's going to keep on happening." The voir dire concluded moments later.

At the conclusion of voir dire, trial counsel for Appellant Schiro made a motion to quash the venire "because numerous members of the panel have already made fact decisions in their mind about whether ... Ybarra is a minor." Trial counsel then stated "in the alternative, allow us to explore additional members. No. 2 has said it and No. 23 has already said they had made their mind up that this guy looks younger than twenty-one." The trial court ruled, "Your motion is denied." The trial court then stated that "I got numbers' 2

---

1. We note that it is not an offense to sell an alcoholic beverage to a minor who "falsely represents himself to be 21 years old or older by displaying an apparently valid Texas driver's license or an identification card issued by the Texas Department of Public Safety, containing a physical description consistent with his appearance...." *See* Tex. Alco. Bev.Code Ann. § 106.03(b) (Vernon Supp.2000). How-

ever, there was no evidence presented to the jury in this case to suggest that Ybarra presented any false identification to Appellants.

2. The prospective juror based his comment upon the appearance of Ybarra, who was present in the courtroom during voir dire.

and 23. I want your numbers for cause other than those two." Trial counsel responded, "Well I'm asking for additional time to talk to these [prospective] jurors to see who's made that determination." The trial court responded, "Denied." A discussion between trial counsel and the trial court was then held out of the presence of the venire and the court reporter. Following that discussion, the trial court removed the following prospective jurors: "2 for cause, 3 for cause, 5 for cause, 15 for cause, 20 for cause, 27 for cause, 28 for cause, 37 for cause, No. 23 for cause, 35 for cause, No. 6 for cause by agreement."

The trial court then called the remaining prospective jurors to the bench individually to ask additional questions.[3] Following the trial court's questions to an individual prospective juror, trial counsel for Appellant Schiro asked her, "Can you tell me, ma'am, what opinions have you started to form?" She responded, "Well, just looking at the minor and I mean, he does look young." Trial counsel responded, "you have a made a factual conclusion that he's the type of person that looks younger than twenty-one?" She responded, "He does but then I would have to hear the facts, I mean, I think this is a club situation but I'm not, and I mean, I don't know the exact details and I would have to hear it."

Trial counsel then renewed his request, by stating to the trial court, "What we're asking for is an opportunity to voir dire on that issue to this panel at this time or have the Court to do that because there have been people who have indicated they have made their mind up, that all we're asking for, Judge." The trial court responded, "Denied."

In their brief, Appellants contend that "there were members of this panel who possibly served on the jury who had already reached a conclusion as to Appellants' guilt or innocence before the trial began and who were subject to challenge

for cause." Appellants contend that the trial court abused its discretion by not allowing them additional time to question the venire about whether they had already concluded that Appellants were guilty or innocent. Appellants also contend that the trial court's ruling prevented them from being able to intelligently exercise challenges for cause and peremptory challenges.

A trial judge may impose reasonable restrictions on the exercise of voir dire examination. *See McCarter v. State*, 837 S.W.2d 117, 119 (Tex.Crim.App.1992). We review a trial judge's decision to limit voir dire under an abuse of discretion standard. *See Dinkins v. State*, 894 S.W.2d 330, 345 (Tex.Crim.App.1995). A trial judge abuses his discretion when he limits a proper question concerning a proper area of inquiry. *See id.* A trial judge may limit a defendant's voir dire under specific circumstances; that is, where a question commits a venire member to a specific set of facts, where the questions are duplicitous or repetitious, where the venire member has already stated his position clearly and unequivocally, and where the questions are not in proper form. *See id.* A trial judge does not abuse his discretion by limiting voir dire examination when the defendant seeks to prolong the voir dire, nor when the issues the defendant seeks to explore are not proper voir dire questions. *See McCarter*, 837 S.W.2d at 121. A question is not proper if its purpose is to discover prospective jurors' views on an issue not applicable to the case. *See id.*

Initially, we note that the trial court removed the prospective jurors from the venire who made the alleged prejudicial statements; these prospective jurors and others were removed from the venire for cause following the conclusion of voir dire. We also note that during the trial court's

---

**3.** Additional prospective jurors were removed from the venire for cause during this proce- dure.

subsequent, individual question-and-answer session with the remaining prospective jurors, trial counsel was permitted to asked several questions relating to the appearance of Ybarra. For example, trial counsel asked a prospective juror, "in your opinion, does he appear to look youthful to you?" Trial counsel also asked, "have you made a conclusion that he's the type of person that looks younger than twenty-one?" The record clearly shows that none of the responses from the prospective jurors indicated that any of them reached a conclusion concerning Appellants' guilt or innocence of the offense of selling an alcoholic beverage to a minor.

Appellants nevertheless argue that "several panelists had reached a conclusion as to Appellants' guilt or innocence, rendering them incapable or unfit to serve on the jury." However, other than the statements identified above by the prospective jurors who were removed from the venire, Appellants cite to no evidence in the record to demonstrate that any of the remaining prospective jurors formed an opinion about Appellants' guilt or innocence. Further, this Court finds no evidence in the record to suggest that any of the prospective jurors who were not removed for cause formed any opinions or conclusions concerning any issue applicable to Appellants' case. We find that the trial court's ruling that did not allow Appellants to reopen voir dire was not an abuse of discretion. *See McCarter*, 837 S.W.2d at 119. Points of error three, four and five are overruled.

### *Writ of Attachment*

In their sixth, seventh and eighth points of error, Appellants contend that the trial court's ruling that denied their request for the issuance of a writ of attachment for John Coffel violated their constitutional due process rights and statutory rights.

Article 24.12 of the Code of Criminal Procedure provides the following:

> When a witness who resides in the county of the prosecution has been *duly served with a subpoena* to appear and testify in any criminal action or proceeding fails to appear, the State or the defendant shall be entitled to have an attachment issued forthwith for such witness.

TEX.CODE CRIM. PROC. ANN. art 24.12 (Vernon 1989).

Here, Appellants requested a writ of attachment to compel John Coffel to appear as a witness. The trial court found the following regarding the service of a subpoena on John Coffel:

> I don't have anything to show that other than some Chris McKern who is not here to testify as to in fact he did serve John Coffel who by your own statement was not served previously on a subpoena that's been filed with the papers of this case on July 29 th, address unknown, and through your own admission, Mr. Coffel apparently was out of town as of Thursday except for the fact you say that this Ms. Chris McKern served him today, and according to the return, it just says the 12th day of August, 1997, executed by Chris McKern, agent for R.P.M. and Associates. Nothing else. *It's not complete. It's not filled in and therefore, it's in my opinion a defective return.*

(emphasis added).

Following Appellants' subsequent proffer of what John Coffel's testimony would be, the trial court again noted the following:

> I find that there was not due diligence executed on behalf of the counsel to have all available remedies to secure the appearance of John Coffel as recited on the subpoena and *what purports to be a return* and your proffer is noted for the record. . . .

(emphasis added).

There is nothing in the record of this matter to controvert the trial court's finding that John Coffel was not properly served with a subpoena prior to Appellants' request for a writ of attachment. A

trial court will not be found in error for refusing to issue a writ of attachment for a witness who was not duly and properly served with a subpoena. *See id.; Erwin v. State*, 729 S.W.2d 709, 713–14 (Tex.Crim. App.1987). Points of error six, seven and eight are overruled.

### Voir Dire Comments by Trial Judge

In their ninth, tenth and eleventh points of error, Appellants contend that certain comments made by the trial court during voir dire violated their rights to due process. Because of such comments, they contend that the trial court should have granted their motion to quash the venire.

During voir dire, the following colloquy ensued between trial counsel for Appellant Haynie and a prospective juror:

[COUNSEL]: You are now a bartender or a waiter at a club, and they have a policy of having somebody at the door -
JUROR: Right.
[COUNSEL]:—who I.D.'s -
JUROR: Right.
[COUNSEL]: Okay. Now, where does your responsibility in that example go?
JUROR: I don't know. That—I guess I'd like to know what does the State or what does the Government—I mean who is responsible in that case, the owner of the bar, is everybody associated with the front door, I don't know -
THE COURT: Well he can't answer that question.
[COUNSEL]: Right. And that's something that's going to have to be decided as people listen to the evidence.
JUROR: That—that makes sense to me.
[COUNSEL]: Yes, sir.
JUROR: I think I could decide if this is a twenty-one and up club if it allows minors in it, then that first line of defense is that person behind the bar accountable? [4]
[COUNSEL]: You bring up an example of everybody knows that there are some clubs that not only allow people that are twenty-one and over in, but they allow people that are under twenty-one, but eighteen and—from eighteen to twenty-one. Okay. So where is that first line of defense in those clubs? I mean, don't you think that—well, I can't put words in your mouth, but would you agree that in the that hypothetical situation -
THE COURT: Well, let me just interrupt because that's kind of like a—it's conveying an idea that the law doesn't provide for. You see, members of the [prospective] jury, when he's saying that where is the first line of defense that this club in his hypothetical example, where does that exist? Well, you see the law does not create any, quote, lines of defenses in terms of the hypothetical. If they've got—if the club chooses to have some guy at the door, check somebody, that does not obviate or exclude somebody from behind the bar from checking. That's just some inner safeguard that the club may rely on, but the law is very clear when it says it is an offense if with criminal negligence a person sells an alcoholic beverage to a minor, and then there are other matters that I've already talked to you about and I've defined criminal negligence. So in his example, his hypothetical, there is no first line of defense created by this statute that's going to be presented to you in the course of this case. There may be safeguards that some employer may instill to assist any of his employees in following what the law is. All right. You may continue.

Appellants contend that the trial court's comments "amounted to an instruction that the offense was one of strict liability and that Appellants were negligent per se." Appellants also contend that the trial court "completely negated [their] defense by instructing the jury panel that each Appellant was guilty unless he or she *personally* checked the identification of the

---

**4.** Trial counsel introduced the concept of "lines of defenses" earlier during voir dire.

minor before serving him an alcoholic beverage." (emphasis in original).

A voir dire examination is for the purpose of enabling counsel to judge the demeanor of the panel and exercise the right to challenge or to peremptorily strike a prospective juror in an intelligent manner. *See Beets v. State*, 767 S.W.2d 711, 744 (Tex.Crim.App.1987), *cert. denied*, 492 U.S. 912, 109 S.Ct. 3272, 106 L.Ed.2d 579 (1989). Trial judges are not prohibited from intervening in examinations of a prospective juror; the court's discretion will be abused only when a judge's comments are reasonably calculated to benefit the State or prejudice the defendant. *See id.; Gardner v. State*, 733 S.W.2d 195 (Tex. Crim.App.1987).

Here, we discern no abuse of discretion by the trial court in making the complained of comments. The trial court's comments were invited by Appellant Ford's trial counsel. They were made in direct response to trial counsel's efforts to commit a prospective juror to the theory that a bartender is not responsible for checking identifications of patrons in bars where the bar maintains a "first line of defense" of having a person stationed at the entrance to check identifications of bar patrons upon entering. In response to trial counsel's remarks, the trial court merely told the prospective jury, in essence, that the jury empaneled in this case would not be instructed on a "first line of defense" because such a defensive theory is not provided for under the applicable statute. To support that remark, the trial court told the jury that the statute provides that "it is an offense *if* with criminal negligence a person sells an alcoholic beverage to a minor . . . ." (emphasis added). This is precisely what section 106.03 of the Alcoholic Beverage Code mandates. *See* TEX. ALCO. BEV.CODE ANN. § 106.03(a) (Vernon Supp.2000). Tracking the language of the statute, the trial court's comments clearly indicated to the venire that the State would have to show that the Appellants sold alcoholic beverages to a minor "with criminal negligence." Contrary to Appellants' contention, the comments made by the trial court did not instruct the jury that Appellants would be strictly liable if they sold an alcoholic beverage to a minor under any circumstance.

Not even a strained interpretation of the trial court's comments result in a finding that the trial court commented on the strength of the evidence or offered an opinion that was reasonably calculated to benefit the State or prejudice Appellants' rights. Points of error nine, ten and eleven are overruled.

### Motion for Mistrial based upon Harmful Testimony

In their twelfth point of error, Appellants contend that the trial court erred by denying their motion for mistrial made in response to the prosecutor eliciting harmful testimony in violation of the court's discovery order. We note that the trial court's discovery order precluded the State from introducing in evidence any extraneous offenses related to Appellants.

During the State's direct examination of Agent Cox, the following colloquy ensued:

Q: Who did you go to the Cherokee Club with?

A: On the night that this occurred?

Q: Yes.

A: My specific job was on the entry team. I couldn't be an undercover agent in this capacity because they knew me, so my job was the entry team. So as the minor exited the establishment, then I go in with the uniformed officers and confirm with the undercover person who had actually sold to point to who they should actually arrest.

Q: When you said you couldn't be undercover because they knew you, who was they?

A: Management, possibly bartenders, they had been issued a couple of warnings in the past.

Immediately following this testimony, trial counsel for Appellants objected. The trial

court sustained the objections. Trial counsel then asked the trial court to instruct the jury to disregard. The trial court told the jury, "Members of the jury, disregard the statement of this witness and response to the last question." Trial counsel then moved for a mistrial, which was denied.

The trial court then instructed the jury to step back inside the jury room. A discussion then took place between the trial court, prosecutor and defense counsel regarding the extraneous offense testimony. Defense counsel then questioned Agent Cox on voir dire examination concerning her testimony. Agent Cox stated that when she was testifying before the jury about "warnings in the past, "she was referring to the fact that she previously issued warnings to the Cherokee Club for failure to mutilate the stamp on distilled spirit and hard liquor bottles and for "happy hour" violations. She testified that she did not mean to suggest that she previously issued warnings or citations to Appellants for serving alcoholic beverage to minors. The trial court ruled that no extraneous offense testimony was placed before the jury because "there's no extraneouses [sic] related to these defendants because warnings or violations of liquor licenses, permits to do business are directly related to the owner of the club or the management...."

■■■ "Only when it is apparent that an objectionable event at trial is so emotionally inflammatory that curative instructions are not likely to prevent the jury being unfairly prejudiced against the defendant may a motion for mistrial be granted." *Bauder v. State*, 921 S.W.2d 696, 698 (Tex.Crim.App.1996). Our system presumes that judicial admonishments to the jury are efficacious. *See id.* As noted above, the jury in this case was instructed by the trial court to disregard Agent Cox's testimony concerning "warnings in the past." Accordingly, to the extent that the testimony was objectionable, we find that it did not rise to the level necessary to warrant the granting of a mistrial. Point of error twelve is overruled.

### Motion for Mistrial based upon Jury Deliberations

■■■ For the sake of clarity, we address Appellants' fourteenth point of error next. Appellants contend that the trial court erred by denying their motion for mistrial made in response to the amount of time the jury took to reach a verdict.

■■■ Length of time that the jury may be held for deliberation rests in the discretion of the trial judge. *See Montoya v. State*, 810 S.W.2d 160, 166 (Tex.Crim.App. 1989). Unless the record reveals that the trial court abused its discretion in holding the jury for deliberations, reversal is not mandated. *See id.*

Appellants contend that the jury in this case should have reached a verdict much earlier than it did because this was a simple case with "only a handful of witnesses" and because the "there was nothing complicated about the jury charge." The record indicates that the jury in this case deliberated for approximately seven hours before reaching a verdict. Specifically, the jury deliberated for approximately three and a half hours on the evening the case was submitted to it and for approximately three and a half hours on the following morning. Appellants moved for a mistrial during the morning that the jury resumed deliberating. The trial court denied the motion.

The State responds to Appellants' point of error by contending that while the trial in this case was not lengthy, it did involve three separate defendants. The jury was asked to consider whether each of the three defendants was criminally negligent for serving an alcoholic beverage to a minor without demanding that he produce valid identification to confirm that he was at least twenty-one. It is reasonable therefore to infer that the jury may have deliberated on each defendant's case for approximately two hours. Viewed in this

light, we are unable to find that the trial court abused its discretion by not granting Appellants' motion for mistrial based upon the length of time the jury took to reach a verdict in this case.

 Appellants also contend that a mistrial was warranted because of a note written to the trial court from the jury during the morning it resumed deliberating. The note stated, "We have an apparent disagreement towards an unanimous decision that we feel will not be resolved as a jury. What do we do now?" The trial court responded to the jury by stating in a written note, "You are to continue to deliberate. A break for lunch may be helpful and then continue after lunch break." Appellants moved for a mistrial a second time, which was denied. We observe, as the trial court did, that the note from the jury did not indicate that it was hopelessly deadlocked. Furthermore, it is not unusual nor an abuse of discretion for a trial court to require a jury to continue deliberating after it indicates to the trial court that it is deadlocked. *See Montoya*, 810 S.W.2d at 166–67 (citations omitted). A trial court's instruction to a jury to continue deliberating will not be construed as coercive unless it pressures the jurors into reaching a verdict or contains additional instructions as to the law. *See id.* at 167. We find no abuse of trial court discretion in not granting Appellants' motion for mistrial based upon the note written by the jury. Point of error fourteen is overruled.

### Motion for New Trial

In their thirteenth point of error, Appellants contend that the trial court erred in denying their motion for a new trial. Appellants' motion for new trial contained the same allegations of trial court error identified in their brief on appeal to this Court. Appellants argue that their motion for new trial should have been granted by the trial court because of, in substance, the cumulative effect of all the errors alleged to have been committed during trial. In light of

our disposition of their foregoing points of error, Appellants' thirteenth point of error is without merit.

Additionally, we note that this is not a proper point of error and presents nothing for review. *See Stoker v. State*, 788 S.W.2d 1, 18 (Tex.Crim.App.1989); *Lape v. State*, 893 S.W.2d 949, 953 (Tex. App.-Houston [14th Dist.] 1994, pet. ref'd) (an allegation that the cumulative effect of two or more errors by the trial court denied appellants a fair trial is not a proper point of error and presents nothing for review). Point of error thirteen is overruled.

The judgment is affirmed.