# NO. 12-14-00297-CR

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *PEDRO YONATAN HERNANDEZ, JR.,*<br>*APPELLANT* | *§* | *APPEAL FROM THE 369TH* |
| *V.* | *§* | *JUDICIAL DISTRICT COURT* |
| *THE STATE OF TEXAS,*<br>*APPELLEE* | *§* | *CHEROKEE COUNTY, TEXAS* |

## *MEMORANDUM OPINION*

Pedro Yonatan Hernandez, Jr., appeals his fifty year sentence following his conviction for aggravated sexual assault of a child. In two issues, Appellant argues that the trial court abused its discretion by limiting his voir dire examination and making improper comments on the voir dire testimony. We affirm.

## BACKGROUND

Appellant was charged by indictment with aggravated sexual assault of a child and pleaded "guilty." The matter proceeded to a jury trial on punishment.[1] At the conclusion of the trial on punishment, the jury assessed Appellant's punishment at imprisonment for fifty years. The trial court sentenced Appellant accordingly, and this appeal followed.

## LIMITATIONS ON VOIR DIRE EXAMINATION

In his first issue, Appellant argues that the trial court improperly restricted his voir dire questioning concerning the venire members' potential bias with regard to the range of punishment.

---

[1] Appellant's issues one and two concern the voir dire proceedings at his trial on punishment. Pertinent excerpts of these proceedings are included in an appendix to this opinion.

## Governing Law

The purposes of voir dire are to (1) develop a rapport between the officers of the court and the jurors, (2) expose juror bias or interest warranting a challenge for cause, and (3) elicit information necessary to intelligently use peremptory challenges. *Dhillon v. State*, 138 S.W.3d 583, 587 (Tex. App.–Houston [14th Dist.] 2004, pet. struck). However, a trial judge may not restrict proper questions that seek to discover a juror's views on issues relevant to the case. *Id.* The scope of permissible voir dire examination is necessarily broad to enable litigants to discover bias or prejudice so that they may make challenges for cause or peremptory challenges. *Zavala v. State*, 401 S.W.3d 171, 175 (Tex. Crim. App. 2011). We review the trial court's determination concerning the propriety of a voir dire question for abuse of discretion. *See Barajas v. State*, 93 S.W.3d 36, 38 (Tex. Crim. App. 2002).

Both parties are entitled to jurors who can consider the entire range of punishment for the particular statutory offense, i.e., from the maximum to the minimum and all points in between. *See Cardenas v. State*, 325 S.W.3d 179, 184 (Tex. Crim. App. 2010). Jurors must be able to consider both a situation in which the minimum penalty would be appropriate and a situation in which the maximum penalty would be appropriate. *Id.* Therefore, both sides may question the panel on the range of punishment and may commit jurors to consider the entire range of punishment for the statutory offense. *Id.* A question committing a juror to consider the minimum punishment is both proper and permissible. *Id.* However, counsel veers into impermissible commitment questions when he attempts to commit a venire member to consider the minimum sentence based on specific evidentiary facts. *Id.*

Additionally, bias has been defined as "an inclination toward one side of an issue rather than to the other . . . [which] leads to the natural inference that [a potential juror] will not . . . act with impartiality." *Anderson v. State*, 633 S.W.2d 851, 853 (Tex. Crim. App. [Panel Op.] 1982. Bias, by itself, is not sufficient for a challenge for cause. *Id.* Instead, an appellant must show that the juror was biased to the extent that he or she was incapable of being fair. *See id.* A juror who indicates this type of bias must be excused despite any protestations by the juror of an ability to set the bias aside and be fair and impartial. *See Clark v. State*, 717 S.W.2d 910, 917 (Tex. Crim. App. 1986).

2

## Voir Dire Questions Concerning Bias

Appellant's voir dire examination focused heavily on whether his client was "starting off in the hole" or whether a panel member "leaned" toward the higher end of the punishment range. The State first objected to Appellant's line of questioning as posing an improper commitment question because he sought to tie his questions to the specific facts of the case.[2] The trial court asked Appellant to rephrase the question. Nonetheless, Appellant continued to specifically relate his questioning to Appellant's case.

As voir dire continued, the State objected that Appellant, by his line of questioning, had "implied [to the panel that] by leaning toward the State or maximum sentence[, a potential juror] wasn't fair and impartial." The trial court explained to Appellant, "I think the only thing you can ask [is] can you be fair and impartial, and leave the leaning part out, whether it's leaning for or leaning against." The State asked that the matter be clarified for the jury. Appellant deferred to the trial court to make that clarification, and the trial court obliged.

On appeal, Appellant argues that "[o]nce a prospective juror indicates that he is bias[ed] in favor of the State[,] he is subject to being challenged for cause." As a result, Appellant contends that the trial court erred in imposing this limitation because it instructed that potential jurors could "be biased in favor of the State as long as they said they could 'consider' the full range" of punishment. Appellant's assertion is incorrect. *See* **Anderson**, 633 S.W.2d at 853.

Here, Appellant repeatedly raised the question to the panel of whether his client was "starting off in the hole." We note, however, that Appellant often responded to a panel member's affirmative response to this question with an inquiry concerning whether that person could be fair and impartial. But at the point where the State made its second objection, it is apparent from the record that the issue had become muddled.

At the ensuing bench conference, the trial court sought to streamline the voir dire examination with consideration given to Appellant's concern over the mere existence of bias by focusing the examination on the determinative issue of whether a prospective juror could be fair and impartial. Following its instruction to the panel, the trial court itself extensively questioned the panel to ensure that any member who did not feel he or she was capable of being fair and

---

[2] *See* **Standefer v. State**, 59 S.W.3d 177, 179 (Tex. Crim. App. 2001) (commitment questions are those that commit prospective juror to resolve, or to refrain from resolving, issue a certain way after learning particular fact). For a commitment question to be proper, one of the possible answers to that question must give rise to a valid challenge for cause. **Id.**

impartial in considering the entire range of punishment had the opportunity to make that fact known. Thereafter, Appellant's attorney essentially endorsed the trial court's examination, stating, "That's really the bottom line for this whole thing, is whether you can do that."

It is apparent that the trial court did not so much restrict Appellant's voir dire examination as focus it on the determinative issues of fairness and impartiality. The trial court's action likely led to a more streamlined voir dire proceeding that elicited more useful answers from potential jurors. Because the trial court did not prohibit Appellant from discovering bias or prejudice that could result in challenges for cause or peremptory challenges, we hold that the trial court's action did not amount to an abuse of its discretion. Appellant's first issue is overruled.

### COMMENT ON THE WEIGHT OF VOIR DIRE TESTIMONY

In his second issue, Appellant argues that the trial court erred in making comments on the weight of certain voir dire testimony. Specifically, Appellant contends that the trial court's remarks following panel members' answers such as "[t]hat is perfect[,]" and "[t]hat's the right answer[,]" amounted to "approval" of these answers. According to Appellant, through its remarks, the trial court conveyed to the panel its opinion concerning the voir dire testimony, "interjected [itself] into the [proceedings] as an apparent willing and willful supporter of the prosecuting attorney[,]" unfairly limited Appellant's ability to conduct a meaningful voir dire examination, and, thereby, denied Appellant a fair and impartial trial on punishment.

Trial judges are not prohibited from intervening in examinations of a prospective juror. *Ford v. State*, 14 S.W.3d 382, 393 (Tex. App.–Houston [14th Dist.] 2000, no pet.). However, the trial court abuses its discretion when it makes comments reasonably calculated to benefit the state or prejudice the defendant. *See id.*; *see also Gardner v. State*, 733 S.W.2d 195, 210 (Tex. Crim. App. 1987).

In the instant case, the trial court's comments followed its explanation to the jury of the determinative issues of fairness and impartiality. When read in the context of the totality of the voir dire proceedings, the trial court's remarks logically can be understood to not have been intended in their literal sense. In other words, the trial court was reacting positively to panel members' responses to its questioning. It is reasonable to conclude that the trial court was responding in this way in the interest of perpetuating the conversation with that person as well as encouraging other panel members to enter the conversation. When the trial court's remarks are

4

read in context with the entirety of the record, there is no indication that it was intending to convey to the panel that a juror's response was, in fact, "perfect" or "the right answer." Nor is there any indication that the venire panel took the trial court's statements in the literal fashion that Appellant suggests. Indeed, the trial court, only moments before, told the jury, "[W]e all want to be fair, but there's some kinds of cases we just can't be. Okay? Nothing wrong with that. There are *no wrong answers* to any of these questions." (emphasis added). We conclude that the trial court's comments were not reasonably calculated to benefit the State or prejudice the defendant. Therefore, we hold that the trial court did not abuse its discretion. Appellant's second issue is overruled.

## DISPOSITION

Having overruled Appellant's first and second issues, we *affirm* the trial court's judgment.

**GREG NEELEY**
Justice

Opinion delivered September 2, 2015.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*

(DO NOT PUBLISH)

5

The following excerpts of the voir dire proceedings in Appellant's trial on punishment are germane to our analysis of Appellant's issues one and two.

[APPELLANT'S ATTORNEY]: The thing about that is in a case like this, -- And Pedro has already told us that he did this thing.

JUROR 5: Right.

[APPELLANT'S ATTORNEY]: I don't know what else you're going to hear from the witness stand, but that's what we're all guided by, is what you're going to hear from the witness stand tomorrow. But my fear is . . . -- is that Pedro and I are starting off kind of in the hole.

. . . .

[APPELLANT'S ATTORNEY]: When we're talking about the range of punishment, from 5 up to 99, or life. How do you feel about that? Do you think that the State may be a little ahead of us in the terms of time you may deem appropriate for a crime like that?

JUROR 5: It's kind of hard to say, you know, without . . . --without knowing all the facts.

[APPELLANT'S COUNSEL]: Okay. Well, let me ask you about that. What factors do you think you would want to know about this case which would make you decide?

JUROR 5: I mean, I do agree, you know, that he does need punishment.

[APPELLANT'S COUNSEL]: Okay. Okay. What factors would you want to hear, would you want to know in order to give what you would consider an appropriate punishment?

JUROR 5: Well, I mean, you know, like, how old the girl was, you know. I mean, what all -- See, I don't know anything about her.

[APPELLANT'S COUNSEL]: No, exactly right, other than he said he did what he's accused of.

JUROR 5: Yes, sir.

[APPELLANT'S COUNSEL]: Okay. But you're telling--you're telling us that you could listen to what is said up there, and then you could consider what the law says, --

JUROR 5: Right.

[APPELLANT'S COUNSEL]: -- and you would follow the law?

JUROR 5: Yes.

. . . .

Appellant's counsel next asked if any other panel members had known anyone who was a victim of sexual assault. After Juror 6 answered affirmatively and explained her experience, the following exchange between her and Appellant's counsel occurred.

[APPELLANT'S ATTORNEY]: Exactly. So, bottom line is we're not starting off in the hole, as far as number of years that you would even consider for something like this, huh? I mean, you could consider the least, up to the maximum?

JUROR 6: I could.

After several other jurors spoke up concerning instances of sexual assault with which they were familiar, Appellant's voir dire examination continued as follows:

[APPELLANT'S ATTORNEY]: Okay. Well, my only concern is that it would affect how you relate to our case. You know, we're just trying to find fair people who can be fair jurors to listen to everything and consider the full range of punishment, as Ms. Patton has already pointed out to us, and if your experience is going to affect that in any way, we would like to know that.

. . . .

JUROR 62: I have some personal experience and knowledge, and this subject is an incident that happened 55 years ago. I'm not terribly interested in discussing it; however, my opinion is that in cases of alcoholism and drug abuse, that rehabilitation is a real possibility, but in sexual abuse cases, I don't believe there is -- rehabilitation is very viable on that.

. . . .

[APPELLANT'S COUNSEL]: All righty. Anyone else on that row?

THE COURT: Excuse me, [Juror 62], just while I -- Do you believe you could be a fair and impartial juror in this case?

JUROR 62: I would not lean very heavily towards the short end of the scale, Your Honor. I will be more prone to think that a higher sentence would be more appropriate.

THE COURT: All right. Thank you very much . . . .

. . . .

[APPELLANT'S ATTORNEY]: [Juror 1], let me ask you, what factors would be -- to you, what factors would be important in making a decision as to the amount of punishment that an individual would receive? What would you want to know about a particular case (inaudible)?

JUROR 1: In what I've heard about this case, I -- I don't know that there's anything in particular. I think it would be the larger end of the scale.

[APPELLANT'S ATTORNEY]: You're saying you can't be fair and impartial?

THE COURT: Ma'am, let me get you to stand, please. I'm going deaf in my old age, and I can't hear very well. Did you -- You said you could be --

JUROR 1: I said it would be very difficult to be impartial on what I've heard so far about this case. It would be very difficult for me to be impartial.

THE COURT: So, you don't believe you could be. And I know --

JUROR 1: I would try, but I just --

THE COURT: I understand.

JUROR 1: -- I don't think -- I think the maximum would be --

THE COURT: You're already telling us you would lean towards the maximum?

JUROR 1: Yes.

THE COURT: Okay. Thank you. Folks, I'm not interrupting [Appellant's Attorney]. Folks, as fair jurors, you know, we all want to be fair, but there's some kinds of cases we just can't be. Okay? Nothing wrong with that. There are no wrong answers to any of these questions.

. . . .

[APPELLANT'S ATTORNEY]: I was going to say the very same thing. I appreciate your candor. I really do. That's what we're here for, we need to find out exactly how you feel. And it's okay to feel like that. Like the Judge said before, we all have prejudices. We like certain things, we don't like certain things. We're all different . . . .

. . . .

[APPELLANT'S ATTORNEY]: How do you feel about that?

. . . .

JUROR 4: About that, I don't -- I don't think I could be fair about that because of the situation.

. . . .

JUROR 4: I would be more toward the far side, not the bottom.

[APPELLANT'S ATTORNEY]: That's okay. I understand that. I appreciate it. [Juror 5], I will ask you the same -- I'm going to ask everybody that question, so --

JUROR 5: I would have to say I would have to go for the far side.

[PROSECUTING ATTORNEY]: Judge, may we approach?

THE COURT: Yes, ma'am.

(At the Bench, on the record)

[PROSECUTING ATTORNEY]: I just want to be clear. The way I'm understanding [Appellant's Attorney's] question is based on what you know about this case right now, could you consider the full range of punishment. That is not a proper question, Judge.

THE COURT: It would be more without knowing the facts.

[PROSECUTING ATTORNEY]: In any case, not this case.  This case, they can lean to the max.

THE COURT:  I understand . . .  can they be fair and impartial.  We can't allude to the facts of this case.

[APPELLANT'S ATTORNEY]:  I'm not asking them about this case. I'm asking them about the case that --

[PROSECUTING ATTORNEY]:  The response [Juror 1] had is based on what I know about this case, and then he said to the next guy Well, what do you think about what she just said.

THE COURT:  Okay.

[PROSECUTING ATTORNEY]:  Well, based on what I know about this case, --

THE COURT:  Rephrase it . . . .

[APPELLANT'S ATTORNEY]:  Okay.

(Open court)

THE COURT:  Let me do this, too.  Ladies and gentlemen, nothing I say is evidence, nothing either one of these two lawyers say is evidence. You're going to make your decisions solely on what you hear from that witness stand.  These are hypotheticals, and the hypothetical is, can you consider the full range of punishment, because that is what you're going to be called upon to do, and you must be able to consider it.  Now, then, so far, there are no facts in this case, and I emphasize, none.  Okay?  So, you have heard no evidence.  You don't know any of the facts. Okay?  Thank you.

[APPELLANT'S ATTORNEY]:  [Juror 1], like the Judge said, we haven't heard any facts; right?  There are no facts, because nothing has been presented from the jury box in the witness stand.  Now, again, without knowing any of the facts, on any case like this, are we starting -- Pedro and I starting off behind?

JUROR 1:  Yes.

[APPELLANT'S ATTORNEY]: So, you're saying any aggravated sexual assault -- not this case, but any aggravated sexual assault case, Pedro and I are starting off behind on our case?

JUROR 1:  Well, you stated that he's already admitted that he was guilty.

[APPELLANT'S ATTORNEY]: That's true. But, again, we're talking about punishment. We're here -- you guys, whoever the 12 of you are . . . [are] going to be considering his punishment.  Now - - and I know these are - - these are egregious cases, they're not good, but the bottom line is you have to listen to what's going to be said from the witness stand up there and then make a decision.  Can you consider - - that's the question - - from the least amount of time up to the maximum, or not. That's it. That's it.  So, with that, no facts, we don't have any facts other than his statement that he did what he's accused of doing, we're talking about punishment; only punishment.  And we know that's from 5 to 99, or life in prison.  Can you -- can each of you do that?  That's it.  And listen, like I've told you before, there are no wrong answers.  It's okay if you can't.  I understand that.  The Judge understands that.  [The Prosecuting Attorney] understands that.  We just need to know.

JUROR 1:  I still stand by what I said.

10

[APPELLANT'S ATTORNEY]: You can't be fair and impartial?

JUROR 1: I don't think so.

. . . .

[PROSECUTING ATTORNEY]: Can we approach, again?

(At the Bench, on the record)

[PROSECUTING ATTORNEY]: Just because they're leaning towards the State does not mean they're not fair and impartial. They're allowed to lean towards the State when the man - - when they are talking about punishment.

THE COURT: The only question you can ask can you be fair and impartial.

[APPELLANT'S ATTORNEY]: That's what I asked.

[PROSECUTING ATTORNEY]: But he implied by leaning toward the State or maximum sentence that wasn't fair and impartial, and can you lean toward the maximum sentence, you can sit out there and think one situation in the world where I would not give the maximum, but as long as you've got that one, you can be a juror.

[APPELLANT'S ATTORNEY]: All I was asking is can she consider the full range of punishment.

. . . .

THE COURT: You cannot say leaning towards the State or putting your client in the hole, or words to that effect, when you're not leaning towards us. I think the only thing you can ask, can you be fair and impartial, and leave the leaning part out, whether it's leaning for or leaning against. Okay?

[PROSECUTING ATTORNEY]: That needs to be clarified, and it needs to be explained to them that they can lean towards the maximum and still be fair.

[APPELLANT'S ATTORNEY]: I'll let you explain it to them.

(Open court)

THE COURT: Ladies and gentlemen, we go back, again, to the range of punishment. You can have feelings in leaning towards one way -- one end or the other. You can say well, right now, I may be in these kind of cases leaning towards the max, or leaning towards the minimum. Okay? The law says you can do that. The question is can you consider the full range of punishment when you're presented the facts, okay, after you are presented the facts. All right? But that's the way the law is dictated to us. Okay? So, thank you very much.

[APPELLANT'S ATTORNEY]: [Juror 1], can you consider the full range of punishment?

JUROR 1: Yes, sir.

[APPELLANT'S ATTORNEY]: Okay. [Juror 4]?

JUROR 4: I don't know if I could, or not.

11

. . . .

THE COURT: Folks, I understand for the first time in your lives you're being inundated with these questions. All right? So, you know, I am sympathetic towards you. Now, you just said I don't know whether I can, or not.

JUROR 4: I don't know whether I could, or not.

THE COURT: Well, that's -- that's a pretty good answer. And the school superintendent over there is shaking his head saying yes, he agrees with you. I'm just trying to figure out. You've got to be able to say I can consider the full range of punishment, because you're going to have to make a decision; those 12 jurors are. All right. I'm going to get to you next, but as I -- when I leave him, -- Let me leave you a minute and go back. Yes, sir? You raised your hand.

JUROR 6: Yes, sir. Number 6. So, can I or anyone else, they are going to do them, can I consider the full range based on the facts?

THE COURT: No. In a hypothetical --

JUROR 6: Hypothetical. Hypothetical, can I consider them? Then, my thought process simply, and y'all both deserve to hear this, someone has admitted guilt to something, with a range of punishment from 5 to 99 years. I can see 5 years in a situation described earlier where there was a misunderstanding, there was a leading on, the role that, you know, the predisposed typical gender of the aggressor was inverted, and I can understand that. Then, I can see someone who rapes a baby, and falling toward the 99. So, given what I have heard today, I could consider five, and I could consider 99. And because of his admission of guilt, which is fact, that punishment for me will fall somewhere in that range once we get in the box and we hear the details.

THE COURT: That is perfect.

JUROR 6: That's it. So, there's my answer.

[APPELLANT'S ATTORNEY]: Good for you.

. . . .

THE COURT: I understand. All right, folks. I'm asking that question. Young lady, did you need to say something? I thought you stood up.

. . . .

JUROR 48: [] I agree with everything he said.

THE COURT: Well, that -- that's good. That's the right answer. That's the right answer. Okay? So, I ask this question to be sure everybody understands. You're going to hear the facts when you sit over there. You're not going to hear any facts until you do. Okay? And then -- you hear the facts, and then you decide the punishment. But going in, you've got to be able to consider it all. Okay? The whole range. Does anyone have a problem with that?

JUROR 4: I do, Judge.

THE COURT: All right. That's not a problem. If you have a problem with it . . . .

. . . .

THE COURT: Okay. No problem. Anyone else? Anyone else, other than the people I'm going to talk to anyway? Okay. Thank you very much. You may proceed, Counselor.

[APPELLANT'S ATTORNEY]: Well, I guess that the rest of you agree with [him], is it? Is that right?

JUROR 6: Yes, sir.

THE COURT: Is that true?

JUROR 6: Yes, sir.

[APPELLANT'S ATTORNEY]: So, you can do it?

JUROR 6: Yes, sir.

[APPELLANT'S ATTORNEY]: And you will do it. Promise?

JUROR 6: Yes, sir.

[APPELLANT'S ATTORNEY]: Okay. That's great. Well, I don't know -- That's really the bottom line for this whole thing, is whether you can do that. Like I said, Pedro, he made a -- he made a terrible mistake. And we've all made mistakes in our lives, but this is one that could cost him a long time in prison. So, we look forward to the 12 of you who will not be eliminated and working with you. Okay? And I know there's some of that you want to come up and talk with us personally, which is great. We look forward to that. Thank you very much, folks . . . .



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

SEPTEMBER 2, 2015

NO. 12-14-00297-CR

**PEDRO YONATAN HERNANDEZ, JR.,**
Appellant
V.
**THE STATE OF TEXAS,**
Appellee

Appeal from the 369th District Court

of Cherokee County, Texas (Tr.Ct.No. 19027)

THIS CAUSE came to be heard on the appellate record and briefs filed herein, and the same being considered, it is the opinion of this court that there was no error in the judgment.

It is therefore ORDERED, ADJUDGED and DECREED that the judgment of the court below **be in all things affirmed**, and that this decision be certified to the court below for observance.

Greg Neeley, Justice.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*