John Guzman TELLO, Appellant,

v.

The STATE of Texas, Appellee.

No. 14–02–01193–CR.

Court of Appeals of Texas, Houston (14th Dist.).

May 25, 2004.

Bruno A. Shimek, Bryan, for appellant.

Douglas Howell, III, Bryan, for appellee.

Panel consists of Justices LESLIE BROCK YATES, HUDSON, and FOWLER.

## OPINION [1]

LESLIE BROCK YATES, Justice.

Appellant John Guzman Tello was driving a truck and towing a trailer that came unhitched, jumped a curb, and struck a pedestrian, resulting in her death. Appellant was convicted by a jury of the state jail felony of criminally negligent homicide and sentenced by the trial court to one year in a state jail facility. In four points of error, appellant complains that (1) the evidence is legally and factually insufficient to support the conviction; (2) his trial counsel was ineffective; (3) the trial court erred by failing to hold a hearing on his motion for new trial; and (4) the trial court erred in finding Carl Stubblefield, one of the State's witnesses, qualified to give expert testimony. We affirm.

## I. FACTUAL BACKGROUND

On the afternoon of October 16, 2001, while driving his Ford F–250 truck, appellant was hauling a trailer with a partial load of dirt from a home under construction and traveling on Copperfield Drive in Bryan, Texas. Pat Supak was walking on the sidewalk that ran along Copperfield Drive. As appellant approached the intersection of Copperfield Drive and Booneville Drive, the trailer that he was towing came unhitched, jumped a curb, and struck Supak. Supak suffered massive injuries and died at an area hospital that day. Appellant was charged with criminally negligent homicide for failing to properly secure the trailer to his truck.

Appellant's trailer was a flatbed, tandem-wheel trailer with three sides consisting of plywood and one side (the end) that was open. The accident report completed by Al Wescoat of the Bryan Police Department on the day of the accident described the trailer as a 1998 brown, 16–foot, homemade trailer. Appellant did not have safety chains on his trailer on the date of the accident. The day after the accident, appellant had safety chains installed on the trailer. The trial court took judicial notice of section 545.410 of the Transportation Code requiring an operator of a light truck to use safety chains to draw a trailer or semi-trailer. Appellant's truck fell within the definition of "light truck." The provisions of the Transportation Code pertaining to safety chains were admitted into evidence.

Officer Allen Sylvester, an advanced accident investigator, and Officer David Long, an accident reconstructionist, investigated the accident scene on October 16 and 17. Office Sylvester testified that he found two small skid marks where the trailer tires had jumped the curb and some marks in the dirt showing where the trailer had traveled before it ran into the tree line along Copperfield Drive. He also found that the ball on the bumper of the truck was loose; it was not tight against the bumper. Officer Sylvester testified that the road surface had some black tar ripples, and he opined that the ripples could have dislodged the trailer from the truck. The photographs of Copperfield Drive in evidence show black tar ripples on the road surface. Officer Sylvester did not

1. Effective September 1, 2003, Brazos County is no longer a part of the district over which the First and Fourteenth Courts of Appeals have jurisdiction. *See* Act of May 1, 2003, 78th Leg., R.S., ch. 44, 2003 Tex. Sess. Laws 81. The Act applies to cases in which the transcripts were not filed before the effective date of the Act, September 1, 2003. Because the record in this case was filed before the effective date of the Act, we have jurisdiction over this case.

see any fresh gouge or fresh metal on the underside of the hitch. He also did not see any gouge marks in the asphalt on the road indicating that either the front or the rear of the trailer had touched the ground after detaching from appellant's truck. Officer Sylvester opined that the front of the trailer was level after it detached from the truck's bumper; in other words, the trailer's front did not drop upon becoming unhitched.

Officer Sylvester also found that the trailer contained a load of dirt and a wheelbarrow. He testified that the dirt and wheelbarrow were located on the upper-front, right corner of the inside of the trailer. The day following the accident, Officer Sylvester asked appellant where he had loaded the dirt and the wheelbarrow. Appellant told Officer Sylvester that he had placed the load of dirt over the right rear axle. Officer Sylvester opined at trial that the force of the trailer hitting the tree caused the dirt and the wheelbarrow to slide forward. He also testified that the hitch was old and that the handle part of the hitch on the trailer had been hammered on or hit over time. It was bent down.

On October 17, Officers Long and Sylvester went to a machine shop where appellant had taken the trailer to be repaired. Officer Sylvester took photographs of the trailer hitch, and then recovered the hitch after a welder used a torch to cut the hitch off the trailer. The hitch was admitted into evidence at trial. Also on October 17, Officer Long inspected the bumper and ball on appellant's F–250 truck. Officer Long testified the ball was a two-inch ball and it was loose on the bumper, causing the ball to rock in the hole. The nut was tight, but he could wobble the shank of the ball in the hole in appellant's truck bumper. He said that was not the proper placement of a ball to a bumper. He said that the shank depth of the ball was too long, and the diameter of the bolt was too small. Officer Long demonstrated for the jury how a trailer hitch properly couples to a ball attached to a truck's bumper. He further testified that the front of appellant's trailer hitch was bent, so that the tabs for the locking mechanism did not fit properly into the designated slots—in other words, the hitch could not lock in place. He opined that the hitch was bent due to it being hammered on and that the hitch on appellant's trailer was not able to lock in place and therefore could come loose from the truck. Officer Long then demonstrated how safety chains are designed to work. He explained that safety chains are designed to prevent a trailer from coming detached from a truck's bumper if the trailer latching mechanism fails.

Carl Stubblefield testified on behalf of the State as an expert on trailers and hitches. Stubblefield worked at Gooseneck Trailer Manufacturing, where he had been installing and repairing trailer hitches for 18 years. He testified that he was familiar with how trailers work and how they should be loaded. Stubblefield testified that he had examined the hitch from appellant's trailer, and he opined that the hitch was worn and appeared faulty. He said it had been hammered on to get it to latch. He also testified that the safety latches were bent down so that the hitch could not lock down. Stubblefield testified that it appeared the safety latches had been tapped down to get the hitch to latch, which is not a normal procedure for latching a hitch properly. He opined that the wear spots indicated that the hitch had been hammered on a number of times. He further testified that the safety stop had been abused or pried so that it was useless, allowing the hitch to come open

and flip all the way off the ball. He said the latch had been bent at an angle, caused by someone turning too sharp and backing the trailer up. He testified that, based on the wear marks on the hitch, the trailer had been pulled with the ball not latched at all. He opined that the hitch should have been replaced before the date of the accident. He said if the trailer hit a bump in the road, it was possible for the hitch to become unlatched. He testified that it was dangerous to have a ball that wobbled because it would jolt the coupler. With respect to the incident in question, he said a bump could have knocked the latch or hitch back and loosened the latching mechanism.

Stubblefield also testified regarding the loading of a trailer. He said that the proper way to load a trailer is to put the load up front because a load towards the back of a trailer could cause the tongue of the trailer to come up and also cause the truck to sway. He opined that loading a trailer directly over the rear axle—or heavier over the rear—would tend to make the end of the truck or the truck bed to which it is attached light.

At trial, a videotaped deposition of appellant taken in a civil lawsuit filed by the victim's family was played for the jury. Appellant testified during the deposition that the trailer was a homemade trailer that he purchased from his father's neighbor. He said he did not know when the trailer was made or who made it. He had replaced the tires, repaired the floorboard, and painted the trailer. However, he had not replaced the trailer hitch. Appellant testified that he was the only person to use the trailer; no one had ever borrowed it. When asked why he did not have safety chains on the trailer, appellant responded that he did not have an answer to that question other than he did not know it was illegal not to have safety chains on a trail-

er. Appellant testified that he had hooked up the trailer that morning and said that he had placed a load of dirt and a wheelbarrow over the rear axle. He said that the load of dirt on the right rear axle would cause the trailer to lift up easily, but he said that it did not occur to him on the date of the accident that would be an unsafe way to load the trailer. He said that he had never had the trailer inspected, and the trailer did not have tags when he acquired it. After the trailer struck Supak, he looked at the trailer hitch and saw the clip was hanging loose; he assumed that the hitch had worn out. After the accident, a police officer told him he should get his trailer fixed as soon as possible. The following day, he had the hitch repaired and added safety chains.

## II. ANALYSIS

### Legal and Factual Sufficiency

■ In his first point of error, appellant contends that the evidence is legally and factually insufficient to support the jury's conviction. In reviewing the legal sufficiency of the evidence, we view the evidence in the light most favorable to the verdict. See *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). We accord great deference "to the responsibility of the trier of fact [to resolve fairly] conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Id.* We presume that any conflicting inferences from the evidence were resolved by the jury in favor of the prosecution, and we defer to that resolution. *Id.* at 326, 99 S.Ct. 2781. In our review, we determine only whether "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* at 319, 99 S.Ct. 2781.

We conduct a factual sufficiency review by reviewing all the evidence in a neutral

light to determine whether (1) the proof of guilt is so obviously weak as to undermine confidence in the jury's determination or (2) the proof of guilt, although adequate if taken alone, is greatly outweighed by contrary proof. *Johnson v. State*, 23 S.W.3d 1, 11 (Tex.Crim.App.2000). We may set aside the jury's verdict only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Clewis v. State*, 922 S.W.2d 126, 129 (Tex.Crim.App.1996). Although we review the fact-finder's weighing of the evidence and are authorized to disagree with the fact-finder's determination, our evaluation should not substantially intrude upon the fact-finder's role as the sole judge of the weight and credibility given to witness testimony. *Johnson*, 23 S.W.3d at 7. In particular, we must defer to the jury's determination concerning what weight to give contradictory testimonial evidence because resolution often turns on an evaluation of credibility and demeanor, an evaluation better suited for jurors who were in attendance when the testimony was delivered. *Id.* at 8. "There is only one question to be answered in a factual-sufficiency review: Considering all of the evidence in a neutral light, was a jury rationally justified in finding guilt beyond a reasonable doubt?" *Zuniga v. State*, No. 539–02, —— S.W.3d ——, ——, 2004 WL 840786, at *7 (Tex.Crim.App. April 21, 2004) (noting that evidence of guilt can "preponderate" but still be insufficient to prove the elements of the crime beyond a reasonable doubt).

■ Appellant was charged with failing to properly secure a trailer to his truck, causing the death of Supak. Section 19.05 of the Penal Code provides that a person commits an offense if he causes the death of an individual by criminal negligence. Tex. Pen.Code Ann. § 19.05(a) (Vernon 2003). Section 6.03(d) of the Penal Code defines the culpable mental state

for a conviction of criminally negligent homicide as follows:

A person acts with criminal negligence, or is criminally negligent, with respect to circumstances surrounding his conduct or the result of his conduct when he ought to be aware of a substantial and unjustifiable risk that the circumstances exist or the result will occur. The risk must be of such a nature and degree that the failure to perceive it constitutes a gross deviation from the standard of care that an ordinary person would exercise under all the circumstances as viewed from the actor's standpoint.

Tex. Pen.Code Ann. § 6.03(d) (Vernon 1994). "[C]riminal negligence means that the actor should have been aware of the risk surrounding his conduct, but failed to perceive it." *Dowden v. State*, 758 S.W.2d 264, 270 (Tex.Crim.App.1988) (en banc) (citation omitted). "Criminal negligence involves inattentive risk creation, that is, the actor ought to be aware of the risk surrounding his conduct or the results thereof." *Montoya v. State*, 744 S.W.2d 15, 29 (Tex.Crim.App.1987) (en banc) (comparing criminal negligence to involuntary manslaughter, for which the culpable mental state is recklessness). "[I]t is the 'failure to perceive' the risk of a resulting death which must rise to the level of a 'gross deviation' from an ordinary standard of care." *Graham v. State*, 657 S.W.2d 99, 101 (Tex.Crim.App.1983) (en banc). The State has to prove that an appellant ought to have been aware of a substantial and unjustifiable risk, not that the appellant was aware of a substantial and unjustifiable risk. *Lopez v. State*, 630 S.W.2d 936, 940 (Tex.Crim.App.1982). Accident is not a defense to negligent homicide. *Sykes v. State*, 399 S.W.2d 349, 352 (Tex.Crim.App. 1966). Ignorance of the law is not a defense to its violation. *See, e.g., Almanza v. State*, 365 S.W.2d 360, 362 (Tex.Crim.App. 1963).

The facts of this case are unique. We are unable to find another opinion of a Texas court addressing the sufficiency of evidence to support a conviction of criminally negligent homicide arising out of a trailer coming unhitched from a truck while being towed. The majority of cases decided by the Court of Criminal Appeals discussing criminally negligent homicide have involved the allegedly inadvertent firing of guns and motor vehicle accidents where speeding, racing, and intoxication often are contributing factors. *See, e.g., Still v. State,* 709 S.W.2d 658, 660 (Tex. Crim.App.1986) (en banc) (stating that factors pertinent to a determination of whether the evidence shows an awareness of the risk that circumstances exist or that the result will occur are the "defendant's familiarity with the gun and its potential for injury; a defendant's conduct in handling the gun; how the weapon could be fired; how the weapon was actually fired, i.e., attendant circumstances"); *Graham,* 657 S.W.2d at 101 (holding that acts of speeding, racing, and ignoring a steady red traffic control was legally and factually sufficient evidence to support conviction for criminally negligent homicide); *Lopez,* 630 S.W.2d at 941 (finding that evidence supported jury's finding that an ordinary or reasonably prudent person, in appellant's position, ought to have been aware that a substantial and unjustifiable risk was created when he exceeded the speed limit and ran a red light on a city thoroughfare at 11:30 p.m.). This court, too, has addressed the sufficiency of evidence to sustain a conviction for criminally negligent homicide involving automobile accidents. *See, e.g., Thompson v. State,* 676 S.W.2d 173, 176 (Tex.App.-Houston [14th Dist.] 1984, no writ) (evidence that defendant did not recall seeing victim prior to her vehicle's striking him, that victim's body was found 72 feet from point of impact and defendant's vehicle left 116 feet of skid marks,

and that defendant told investigating police she was driving 50 miles per hour at time of accident occurred when children were on their way to school in residential area with posted speed limit of 30 miles per hour was sufficient to support conviction of criminally negligent homicide).

Although there are no Texas cases discussing criminal liability for a trailer coming unhitched, this factual scenario has been the subject of civil litigation. *See, e.g., Moore v. State Farm Mut. Auto. Ins. Co.,* 792 S.W.2d 818, 820 (Tex.App.-Houston [1st Dist.] 1990, no writ) (stating that jury's no negligence finding in civil lawsuit was against great weight and preponderance of the evidence when defendant placed the wrong size ball in a two-inch socket to hook up a trailer, drove on a rough road, and a hit a bump in the road, causing the bolt to come loose from the bumper, and resulting in the trailer swerving into other lane of traffic and hitting another vehicle); *Dulaney v. Stephens,* No. 05–96–00189–CV, 1998 WL 204525, at *1 (Tex.App.-Dallas April 23, 1998, pet. denied) (not designated for publication) (concluding that evidence of negligence was conclusive where defendants' homemade trailer loaded with pipe came unhitched from truck and was left in middle of road where another vehicle struck it, resulting in the death of two individuals in that vehicle). Furthermore, this court recently found the evidence was legally and factually sufficient to sustain a conviction for criminally negligent homicide in a case involving an accident with a tractor-trailer rig on a narrow bridge. *See Stadt v. State,* 120 S.W.3d 428, 433–37 (Tex.App.-Houston [14th Dist.] 2003, pet. ref'd) (involving accident that occurred on a bridge known as the "death bridge" when appellant was speeding).

With that background discussion of Texas case law, we turn to the inquiry at hand.

We must decide whether the evidence is legally sufficient to support the conviction of appellant for criminally negligent homicide. After a careful review of the record and relevant Texas authority, we conclude the State met its burden in this case. Appellant failed to use safety chains, as required by section 545.410 of the Transportation Code. All of the State's witnesses testified about the age of the hitch, as well as its poor condition. They also testified that the hitch was not properly secured on the date in question and discussed how this caused the accident in question. Stubblefield, who had extensive experience working with and repairing trailer hitches, examined appellant's hitch and gave detailed testimony about its condition and the manner in which it was secured to appellant's truck before it broke loose and struck Supak. He testified that it was worn and faulty, that the safety latches did not work, that the safety stop had been abused so that it was unworkable and that in this condition the trailer could become unlatched if it hit a bump in the road. He said the hitch should have been replaced before the accident. In summary, there is evidence in the record that appellant caused the death of Supak, that he ought to have been aware that there was a substantial and unjustifiable risk of death from his failure to properly secure the trailer, and that his failure to perceive that risk constituted a gross deviation from the standard of care an ordinary person would have exercised under like circumstances. We conclude the jury could have found the essential elements of the offense of criminally negligent homicide beyond a reasonable doubt.

In conducting a factual sufficiency review, we review all of the evidence in a neutral light. Appellant testified that did not know of the requirement that he use safety chains. He said that he had not previously experienced difficulty with the trailer hitch coming undone. However, the fact that he had not experienced difficulty with the trailer on prior occasions is not probative of whether he ought to have been aware of the substantial risk of death caused by his failure to properly secure his trailer on the date of the accident in question. Considering the evidence of the age and wear of his trailer hitch and appellant's failure to secure his trailer with safety chains, we conclude the evidence is factually sufficient to support the jury's conviction. Accordingly, appellant's first point of error is overruled.

### Ineffective Assistance of Counsel

 In his second point of error, appellant complains that he was denied effective assistance of counsel during trial. The bases of his complaint are the following alleged deficiencies by his counsel: (1) failing to object to the testimony of the decedent's husband, James, other than identity testimony, during the guilt-innocence phase of trial; (2) admitting during closing argument that appellant was negligent; and (3) failing to challenge for cause two jurors who knew the decedent or her husband. We hold that the decision not to object during the testimony of Supak's husband did not amount to ineffective representation and further hold that appellant has failed to develop a record to show that his trial counsel was otherwise deficient.

 Both the United States and Texas Constitutions guarantee an accused the right to assistance of counsel. U.S. CONST. Amend. VI; TEX. CONST. art. I, § 10; TEX. CODE CRIM. PROC. ANN. art. 1.05 (Vernon 1977). This right includes the right to reasonably effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 686, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *Ex parte Gonzales*, 945 S.W.2d 830, 835 (Tex.Crim.App.1997). To prove ineffective

assistance of counsel, an appellant must show that (1) trial counsel's representation fell below an objective standard of reasonableness, based on prevailing professional norms; and (2) the result of the proceeding would have been different but for trial counsel's deficient performance. *Strickland*, 466 U.S. at 688–92, 104 S.Ct. 2052; *see also, e.g., Thompson v. State*, 9 S.W.3d 808, 812 (Tex.Crim.App.1999). An appellant has the burden of proving his claim by a preponderance of the evidence. *Jackson v. State*, 973 S.W.2d 954, 956 (Tex.Crim. App.1998). We apply a strong presumption that trial counsel was competent. *Thompson*, 9 S.W.3d at 813. We presume counsel's actions and decisions were reasonably professional and motivated by sound trial strategy. *Jackson v. State*, 877 S.W.2d 768, 771 (Tex.Crim.App.1994). Appellant has the burden to rebut this presumption by presenting evidence illustrating why trial counsel did what he did. *See id.* An appellant usually cannot meet this burden if the record does not specifically focus on the reasons for trial counsel's conduct. *Osorio v. State*, 994 S.W.2d 249, 253 (Tex.App.-Houston [14th Dist.] 1999, pet. ref'd). In the absence of a proper evidentiary record developed at a hearing on a motion for new trial, it is extremely difficult to show that trial counsel's performance was deficient. *Freeman v. State*,

125 S.W.3d 505, 506 (Tex.Crim.App.2003). When there is no hearing on a motion for new trial or if trial counsel does not appear at such a hearing, an affidavit from trial counsel becomes almost vital to the success of a claim of ineffective assistance of counsel. *Howard v. State*, 894 S.W.2d 104, 107 (Tex.App.-Beaumont 1995, pet. ref'd).

In this case, the trial court's judgment was rendered on October 14, 2002. Appellant filed a motion for new trial alleging ineffective assistance of counsel and requested a hearing on November 13, 2002. In an affidavit submitted with the motion for new trial, appellant's counsel stated some of the testimony of Supak's husband should not have been admitted during the guilt-innocence phase, but he did not object during the testimony because he did not want to offend the jury. Trial counsel did not address his conduct in leaving the two complained-of jurors on the panel or his admission that appellant was negligent. The record is silent as to the reasoning and strategy behind his decisions in those instances. Appellant, therefore, has not rebutted the presumption that his trial counsel made those decisions in the exercise of reasonable professional judgment, and appellant has not demonstrated in the record that trial counsel rendered ineffective assistance by failing to challenge the two jurors [2] and by admitting in closing

---

2. During voir dire, a venire member, Ms. Lovas, said she was a close personal friend with and attended church with Pat Supak and sang at her funeral. Another venire member, Mr. Rundle, initially informed counsel for both parties that he knew the Supak family well. He said he had known them for 22 years and that James Supak was his associate department head. Another venire member, whose name is not identified, said he or she knew James well. The jury numbers of Ms. Lovas and Mr. Rundle are not reflected in the reporter's record. The record indicates that Ruth Lovas was selected as a juror. A Mr. *Runge* was pulled aside by counsel and the trial court for individual questioning. He said he knew the Supaks well and that he was the department head when James was the associate department head. (No university or college is identified.) Although the record suggests that counsel for both parties agreed to remove Mr. Runge, it is not clear whether he was removed from the panel. *Ms. Rundle* was selected as a juror. It also is unclear if the unidentified venire member who said he or she knew James well was selected as a juror. Assuming that two of the venire members knew the Supaks well, it is difficult to imagine any reasonable trial strategy for failing to challenge those individuals. The Court of Criminal Appeals has held, however, that without additional evidence in the record con-

argument that appellant was negligent. *See Thompson,* 9 S.W.3d at 814. We will not speculate about counsel's strategic decisions, and thus, we cannot find appellant's trial counsel ineffective based on those two asserted grounds. *See Gamble v. State,* 916 S.W.2d 92, 93 (Tex.App.-Houston [1st Dist.] 1996, no pet.) ("Due to lack of evidence in the record concerning trial counsel's reasons for conducting voir dire as he did and for not objecting to certain testimony and argument, we are unable to conclude that trial counsel's performance was deficient."). We therefore overrule appellant's second point of error.

## Motion for New Trial

In his third point of error, appellant complains that the trial court erred in not holding a hearing on appellant's motion for new trial after the initial hearing was cancelled. Appellant asks this Court to reverse and remand this matter for a new trial or, alternatively, to abate this appeal and order the trial court to conduct a hearing on appellant's motion for new trial. A notice of hearing on appellant's motion for new trial was issued by the trial court on November 21, setting the hearing on December 6. Appellant states in his brief that the hearing was cancelled. There is no indication in the record that appellant rescheduled the hearing. Although appellant complains in his third point of error that the trial court should have reset his motion for new trial for a hearing, appellant did not develop a record of his efforts to reschedule the hearing. In the absence of a record showing appellant's efforts to reschedule the hearing on his motion for new trial, he cannot complain about the overruling of his motion for new trial by

operation of law. *See, e.g., Johnson v. State,* 925 S.W.2d 745, 748 (Tex.App.-Fort Worth 1996, pet. ref'd) (stating that it was incumbent upon defendant to "develop some record, before the expiration of the court's jurisdiction, which demonstrated his efforts to reschedule the hearing" on the defendant's motion for new trial).

In any event, appellant was not deprived of an opportunity to offer proof in support of his motion for new trial. His trial counsel provided an affidavit that was submitted with appellant's motion. Our review of the affidavit leads us to conclude that appellant's complaint that his counsel was ineffective for failing to object to some of the testimony of Supak's husband is without merit. Appellant's counsel testified in his affidavit that he did not object during the testimony of the decedent's husband because he did not want to offend the jury. Thus, appellant's counsel offered a trial strategy for why he did not object. Although in hindsight he states that he should have objected, we cannot find that he was ineffective based on the record before us. The motion for new trial and affidavit do not provide a reasonable basis to conclude that appellant's trial counsel was ineffective. We overrule appellant's third point of error.

## Expert Testimony

Appellant complains in his fourth point of error that Carl Stubblefield was not properly qualified as an expert witness. The State's attorney asked Stubblefield about his work experience and whether he had examined the hitch in question. The prosecuting attorney then asked whether Stubblefield had an opinion about

cerning trial counsel's reasons for not challenging or striking a venire member, we are unable to conclude that appellant's trial counsel's performance was deficient. *Jackson v. State,* 877 S.W.2d 768, 771 (Tex.Crim.App.

1994); *see also Delrio v. State,* 840 S.W.2d 443, 446–47 (Tex.Crim.App.1992) (holding that trial counsel's failure to challenge a venire member who voiced lack of impartiality did not constitute ineffective assistance).

the hitch, based on his experience and his work. He answered that he did, and then told the jury that the hitch was worn and appeared faulty. Appellant's counsel did not object to Stubblefield's qualifications until after Stubblefield provided his expert opinion. The trial court overruled the objection. Appellant failed to preserve his objection to Stubblefield's qualifications. *See* TEX.R.APP. P. 33.1(a); *see also Rocha v. State*, No. 05–03–00808–CR, 2004 WL 516169, at *3 (Tex.App.-Dallas March 17, 2004, no pet. h.) (not designated for publication) ("A party may not successfully challenge evidence admitted elsewhere without objection.") (citation omitted); *Coy v. State*, No. 01–02–00593–CR, 2003 WL 22512075, at *5 (Tex.App.-Houston [1st Dist.] Nov. 6, 2003, pet. filed) (not designated for publication) ("To preserve error, appellant must object at the earliest opportunity and continue to object each time the objectionable evidence is offered.") (citation omitted). We overrule appellant's fourth point of error.

Having overruled all of appellant's points of error, we affirm the trial court's judgment.