# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

NO. 03-08-00400-CR
NO. 03-08-00401-CR

**Cindy Martin, Appellant**

**v.**

**The State of Texas, Appellee**

## FROM THE COUNTY COURT AT LAW NO. 2 OF BELL COUNTY
## NOS. 2C05-08069 & 2C05-08070, HONORABLE JOHN MISCHTIAN, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Appellant Cindy Martin appeals her convictions in a joint trial for resisting arrest and interfering with a peace officer's performance of a duty. *See* Tex. Penal Code Ann. § 38.03 (West 2003), § 38.15 (West Supp. 2008). After the jury found appellant guilty of both offenses, the trial court assessed punishment at sixty days in the county jail and a fine of $100.00 in each case. The sentences are to run concurrently.

### POINTS OF ERROR

In her first point of error appellant challenges both the legal and factual sufficiency of the evidence to sustain the conviction for resisting arrest. Likewise, in point of error two, appellant challenges in a single point the legal and factual sufficiency of the evidence to sustain the

conviction for interfering with a police officer's performance of his duty. These should have been more properly four points of error instead of two.[1]

## BACKGROUND

At appellant's joint trial on May 27-29, 2008, Belton Police Officer Jerome Simpson, Jr. testified that he was on patrol on September 14, 2005. He was in police uniform with a badge and was driving a marked black and white police vehicle. Shortly after 1 a.m. that morning, Officer Simpson observed a vehicle that appeared to be speeding about 40 m.p.h. in a posted 30 m.p.h. area. Officer Simpson began to follow the vehicle but its speed did not change. Officer Simpson decided to stop the vehicle when it turned onto Sparks Avenue. He activated his police vehicle's overhead flashing lights. The suspect vehicle seemed to accelerate its speed. Officer Simpson then "hit the siren," and notified the dispatcher that he had a suspect vehicle that would not stop. That vehicle suddenly pulled into a driveway at 205 Burnet Road. Officer Simpson believed that the driver would "bail out and run." The officer decided to make a "felony stop,"

---

[1] This is so because it has been established that a factual sufficiency review begins with the assumption or presumption that the evidence supporting the jury's verdict is legally sufficient. *Clewis v. State*, 922 S.W.2d 126, 134 (Tex. Crim. App. 1996) (citing *Stone v. State*, 823 S.W.2d 375, 381 (Tex. App.—Austin 1995, pet. ref'd, untimely filed)); *Key v. State*, 88 S.W.3d 672, 677 (Tex. App.—Tyler 2002, pet. ref'd). Each of these claims may be raised independently as a sole point of error on direct appeal. If both claims are raised and the appellate court finds that the evidence is legally insufficient, the factual sufficiency claim is not addressed. *Carney v. State*, 31 S.W.3d 392, 398-99 (Tex. App.—Austin 2000, no pet.). Moreover, the standards for review for legal and factual sufficiency claims are different and must be carefully applied to the proper claim. Only recently, the Texas Court of Criminal Appeals observed that a legal sufficiency review is a due process requirement, while a factual sufficiency review is a creature of state law. *Lasiter v. State*, 275 S.W.3d 512, 518 (Tex. Crim. App. 2009) (citing *Watson v. State*, 204 S.W.3d 404, 406 (Tex. Crim. App. 2006)).

meaning to "take the driver down at gunpoint." He believed that other police units were nearby. He parked his police vehicle on the street near the driveway with its flashing overhead lights still activated. Officer Simpson drew his pistol and approached the suspect vehicle in the driveway. It was dark so he used his flashlight "to see what was going on." Officer Simpson ordered the driver, later identified as Barrett Brett Gunn, out of the car and onto the ground.[2] Gunn appeared intoxicated to Officer Simpson who quizzed him as to why he did not stop earlier. Gunn replied that he was just trying to get to "that house" referring to 205 Burnet. Before Officer Simpson could "pat down" Gunn, he became aware that there were two small children in Gunn's car. While Gunn was on the ground being held at gunpoint, an SUV or truck suddenly pulled into the driveway passing between the police vehicle and the Gunn car and then stopped. It caught the officer by surprise and distracted him.

A woman, later identified as appellant, aggressively got out of the SUV about fifty feet from Officer Simpson. He testified that he believed appellant moved in his direction, but she may not have. Officer Simpson told appellant to stop and "ma'am, stay there." He reported that appellant began cursing and stated that she was on her own property and would do what she wanted. Officer Simpson told appellant not to leave the area, but she turned in the opposite direction and moved toward the house.

From the porch light, Officer Simpson was able to recognize appellant as a woman with whom he had contact at that same address a year or so earlier. He explained that he and other

---

[2] It appears from the record that the police vehicle's video had run out of tape or film, and that Officer Simpson's microphone was being charged in the police vehicle. Officer Simpson did not use his collar mic or microphone as it was to be used only in extreme emergencies.

officers made a disturbance call at 205 Burnet but the report turned out to be unfounded. When leaving the premises on this earlier occasion, appellant told Officer Simpson that if he ever came on her property again she would shoot him. He saw a pistol and possibly a rifle in the house at the time.[3] When appellant moved toward the house on the occasion in question, Officer Simpson believed that she might attempt to secure weapons as he suspected that appellant had some connection with Gunn. He again told appellant "to stop," and when she continued her walk, he left Gunn on the ground,[4] holstered his pistol, and started after appellant, telling her that she was under arrest for interfering with an officer. He grabbed her by her arm, but she continued to reach for the front door after getting on the stairs to the porch. Officer Simpson tried to handcuff appellant but reported that appellant began "pushing and pulling and trying to get away." As they continued to "struggle," Officer Simpson stated that some children opened the front door of the house. He told them to go inside and shut the door.

Officer Simpson, who was 6'1" tall and weighed 245 pounds and held a second degree black belt in Judo, finally got a "shoulder hold" on appellant. They fell onto a car and onto the ground. The officer was on top of appellant. He had handcuffed one arm but was trying to extract appellant's other arm from beneath her. At this time Officer Carl Snellings arrived and placed a centurion control stick in appellant's back at a nerve pressure point. This caused appellant to offer

---

[3] Officer Kelly Murphy, who arrived on the scene shortly after Gunn was stopped, confirmed the earlier incident described by Officer Simpson, although he did not hear the conditional threat. He did see weapons in the house.

[4] Officer Simpson had not had time to search Gunn or his vehicle. The two small children were in the Gunn car and its headlights and ignition had not been turned off. Officer Simpson, however, knew that other police officers would be on the scene shortly.

4

up her other arm for handcuffing. Appellant was placed in a patrol unit after Officer Simpson put pressure on a nerve near her ear.

Officer Simpson then returned to his investigation of Gunn and administered field sobriety tests. Officer Kelly Murphy had arrived and temporarily taken custody of Gunn. Officer Simpson later had surgery on his knee as a result of his encounter with appellant.

Appellant did not testify. The only defense witness offered before the jury was Sheila Mooney, appellant's daughter, who was fourteen years old at the time of the incident. Sheila related that she lived at 205 Burnet with her mother, stepfather and younger brother at the time. She recalled that in the early morning hours of September 14, 2005, she heard her mother yelling and crying outside the house. Her stepfather was away in connection with his railroad job. She opened the front door and saw her mother prone on the stairs with Officer Simpson standing over her. He would not respond to Sheila's questions as to what was happening. Her mother slid keys and a cell phone across the porch and told her (Sheila) to call her grandfather. As she watched, Officer Simpson picked her mother up and they fell onto a nearby car. Sheila then reported that a female officer Kimberly Brannan [now Smith] screamed at her to go inside. She did and then called her grandfather.

During Sheila's direct testimony, the mystery of Barrett Gunn's connection with appellant was slightly unveiled. Sheila identified Gunn as a "cousin" whose relationship had never been explained to her, that he had "just come back" and was "visiting" and staying at 205 Burnet. The children in Gunn's car, including a one-year-old child, were connected with Gunn and staying

at the same address. Sheila reported that the officers brought the children to her, and that she, her brother, and the children later went to "grandfather's house" to spend the rest of the night.

Appellant introduced the King's Daughters Hospital emergency room records where she was treated later on September 14, 2005 for multiple areas of bruises and pain.

**LEGAL SUFFICIENCY**

We turn now to the initial claim in appellant's first point of error. In determining whether the evidence is legally sufficient to support the judgment, we view the evidence in the light most favorable to the verdict, asking whether any rational trier of fact could have found beyond a reasonable doubt all the essential elements of the offense charged. *See Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *King v. State*, 29 S.W.3d 556, 562 (Tex. Crim. App. 2000); *Johnson v. State*, 23 S.W.3d 1, 7 (Tex. Crim. App. 2000).

The evidence viewed in this light and all reasonable inferences drawn therefrom are evaluated in this review. *Alvarado v. State*, 912 S.W.2d 199, 207 (Tex. Crim. App. 1995). A reviewing court must consider all evidence, rightly or wrongly admitted, which the trier of fact was permitted to consider. *See Garcia v. State*, 919 S.W.2d 370, 378 (Tex. Crim. App. 1994); *Johnson v. State*, 871 S.W.2d 183, 186 (Tex. Crim. App. 1993). The standard for review is the same for both direct and circumstantial evidence. *Green v. State*, 840 S.W.2d 394, 401 (Tex. Crim. App. 1992). Appellate courts measure the legal sufficiency of the evidence against a hypothetically correct jury charge. *See Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997).

In analyzing a challenge to the legal sufficiency of the evidence, the reviewing court does not realign, disregard, or weigh the evidence. *Rodriguez v. State*, 939 S.W.2d 211, 218

6

(Tex. App.—Austin 1997, no pet.). The jury, as the trier of fact, is the sole judge of the credibility of the witnesses and of the weight to be given the testimony. *See Sharp v. State*, 707 S.W.2d 611, 614 (Tex. Crim. App. 1986); *Williams v. State*, 692 S.W.2d 671, 676 (Tex. Crim. App. 1984).

Pursuant to section 38.03 of the Texas Penal Code,[5] appellant was charged by complaint and information with the Class A misdemeanor offense of resisting arrest. The information in pertinent part provided:

> That in the County of Bell, State of Texas, on or about the **14th day of September, 2005**, A.D., in Bell County, Texas and anterior to the filing of this information, one **Cindy Martin**, the defendant, did then and there intentionally prevent and obstruct **Jerome Simpson**, a person the defendant knew was a peace officer, from effecting an arrest and search and transportation of **Cindy Martin**, by using force against the said officer in that the defendant struggled with the said officer, . . .

(Emphasis in original).

---

[5] Section 38.03 provides:

(a) A person commits an offense if he intentionally prevents or obstructs a person he knows is a peace officer or a person acting in a peace officer's presence and at his direction from effecting an arrest, search, or transportation of the actor or another by using force against the peace officer or another.

(b) It is no defense to prosecution under this section that the arrest or search was unlawful.

(c) Except as provided in Subsection (d), an offense under this section is a Class A misdemeanor.

(d) An offense under this section is a felony of the third degree if the actor uses a deadly weapon to resist the arrest or search.

Tex. Penal Code Ann. § 38.03 (West 2003).

In her brief, appellant urges that the evidence is legally insufficient to support appellant's conviction because the State failed to prove that appellant used force against the police officer. Appellant limits her legal sufficiency claim to this element of the offense of resisting arrest. This is the only claim we need address.

Our penal code does not provide a definition of the phrase "using force against" as set forth in section 38.03(a) or of those words individually. Simply refusing to cooperate with being arrested does not constitute resisting arrest by force. *Sheehan v. State*, 201 S.W.3d 820, 823 (Tex. App.—Waco 2006, no pet.). Non-cooperation with an arrest is not by itself an act of the "use of force against" a peace officer under the statute. *Id*. at 822.

Appellant calls attention to part of Officer Simpson's testimony: "She was just trying to get away. She had no intention to physically injure me." Appellant then notes that Officer Simpson agreed that she did not assault, hit, kick, bite, slap, or spit at him, nor did she use her keys or purse in their encounter. Appellant relies upon *Raymond v. State*, 640 S.W.2d 678, 679 (Tex. App.—El Paso 1982, pet. ref'd) (holding that evidence defendant simply pulled away was insufficient to show use of force against officer), and *Leos v. State*, 880 S.W.2d 180, 184 (Tex. App.—Corpus Christi 1994, no pet.) (holding that citizen's attempt to frustrate officer's attempt to shackle him was insufficient showing of force directed toward officer to sustain conviction for resisting arrest). Both *Raymond* and *Leos* sought to distinguish violence directed "toward" an officer from force utilized in pulling away from an officer. Appellant acknowledges that *Torres v. State*, 103 S.W.3d 623, 627 (Tex. App.—San Antonio 2003, no pet.), and *Bryant*

8

*v. State*, 923 S.W.2d 199, 207 (Tex. App.—Waco 1996, pet. ref'd), were both critical of the *Raymond* and *Leos* decisions.

In *Pumphrey v. State*, 245 S.W.3d 85 (Tex. App.—Texarkana 2008, pet. ref'd), the court noted that Texas cases differ on what is required to establish a use of "force against" an officer under section 38.03. Many cases, the court observed, have at least verbalized a distinction between a force directed *toward* an officer and a force that opposes the officer's effort to arrest but which is directed away from him or her. *Id*. at 89-90. Other cases explicitly hold that only force directed *toward* an officer can support a conviction. *Id*. at 90 (citing the *Raymond* and *Leos* decisions). The *Pumphrey* court noted that most cases involve actions that are clearly more than a simple pulling away from the officer's "restraint." *Id.* The court concluded that the distinction between force directed toward the officer and force in opposition to, but away from, the officer can result in an almost "metaphysical analysis." *Id*. at 91. The court believed these questions can be avoided by reference to section 38.03 itself. *Id*. at 91. The *Pumphrey* court then added:

> The ordinary meaning of "resist" does not require that the resistance be directed toward the person or force being resisted. To "resist" is to "exert oneself so as to counteract or defeat." MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY 1060 (11th ed. 2006). Interpreting "force against" to require that force be directed toward the officer contradicts the ordinary meaning of the word "resist." In the absence of a statutory definition to the contrary, we believe the proper understanding of "against" in the context of "resisting arrest" allows for the use of force in opposition to, but not necessarily directed toward, the officer who is attempting to make an arrest. We conclude that "against" as used by Section 38.03 of the Texas Penal Code, does not require force directed *at or toward* the officer, but also is met with any force exerted *in opposition to*, but away from, the officer, such as a simple pulling away.
>
> . . . .

9

Here, Pumphrey forcefully pulled away from the officer's restraining grasp. Therefore, her conviction must stand. That being said, we add that, here, Pumphrey did more than merely pull away from the officer. She jerked, she squirmed, she twisted, she turned, and she struggled, all against the officer's efforts to physically restrain her in the process of making the arrest. Those actions also sufficiently support the conviction.

*Id*. at 91-92.

Appellant leans heavily on Officer Simpson's testimony concerning actions that appellant did not take against him to support her theory of mere non-cooperation with the arrest. In a sense, such testimony is somewhat inconsistent with the balance of the Simpson testimony. The record reflects evidence of appellant's strong opposition and resistance to the arrest. When Officer Simpson first tried to handcuff appellant, he related that appellant began pushing, pulling, and shoving, and "continued to squirm around and fight." He stated that appellant "actually spun around and was able to get me with her arm." He attributed the "violent twisting and turning" on the stairs in causing a tear in the meniscus in his knee. He described appellant as continuing to "struggle violently" and their encounter as a "violent tussell." Once Officer Simpson got a shoulder lock on appellant, they fell onto a car, and then she pushed him to the ground. He got on top of her and they continued to struggle until Officer Snellings arrived with his control stick.

Viewing all the evidence in the light most favorable to the jury's verdict, we conclude that any rational trier of fact could have found beyond a reasonable doubt all the essential elements of the offense of resisting arrest. We overrule appellant's first contention that the evidence is legally insufficient to sustain the conviction.

## FACTUAL SUFFICIENCY

We now examine the second part of the first point of error. In a factual sufficiency review, the evidence is analyzed in a neutral light rather than (as in a legal sufficiency review) in the light most favorable to the verdict. *Roberts v. State*, 220 S.W.3d 521, 524 (Tex. Crim. App. 2007). Evidence can be factually insufficient in one of two ways: (1) when the evidence supporting the verdict is so weak that the verdict seems clearly wrong and manifestly unjust; and (2) when the supporting evidence is outweighed by the great weight and preponderance of the contrary evidence so as to render the verdict clearly wrong and manifestly unjust. *Id*.; *Watson v. State*, 204 S.W.3d 404, 414-15 (Tex. Crim. App. 2006). Under this standard of review, while we have the ability to second-guess the fact-finder to a limited degree, we must nonetheless be deferential to the fact-finder's determinations and a high level of skepticism about the jury's verdict is necessary before a reversal can occur. *Roberts*, 220 S.W.3d at 524; *Marshall v. State*, 210 S.W.3d 618, 625 (Tex. Crim. App. 2006); *Cain v. State*, 958 S.W.2d 404, 407, 410 (Tex. Crim. App. 1997). In a factual sufficiency analysis, it must be remembered that the jury is still the trier of fact and judge of the credibility of the witnesses. *Santellan v. State*, 939 S.W.2d 155, 164 (Tex. Crim. App. 1997). Appellate courts should be on guard not to substitute their own judgment in these matters for the trier of fact. *Id*.

We need not reiterate the facts. Applying the above-described standard of review, and considering all the evidence impartially in a neutral light, we reject appellant's contention that the evidence is factually insufficient to sustain her conviction for resisting arrest under section 38.03. The multifarious first point of error is overruled.

11

**THE OTHER OFFENSE**

In her second point of error, appellant again challenges in a single point of error the legal and factual sufficiency of the evidence to sustain her conviction for interference with the duties of a police officer. Appellant contends that merely being present at the scene of another citizen's arrest, and leaving the scene of that arrest does not, without more, constitute a violation of section 38.15.

In pertinent part that statute provides:

(a) A person commits an offense if the person with criminal negligence interrupts, disrupts, impedes, or otherwise interferes with:

(1) a peace officer while the peace officer is performing a duty or exercising authority imposed or granted by law.

(d) It is a defense to prosecution under this section that the interruption, disruption, impediment, or interference alleged consisted of speech only.

Tex. Penal Code Ann. § 38.15 (a)(1), (d) (West Supp. 2008).[6]

Section 6.03(a) of the Texas Penal Code defines the culpable mental state of criminal negligence:

A person acts with criminal negligence, or is criminally negligent, with respect to circumstances surrounding his conduct or the result of his conduct when he ought to be aware of a substantial and unjustifiable risk that the circumstances exist or the result will occur. The risk must be of such a nature and degree that the failure to perceive it constitutes a gross deviation from the standard of care that an ordinary

---

[6] The current code is cited for convenience. The pertinent part of the statute remains unchanged from the Act of May 25, 2005, 79th Leg., R.S. ch. 1212, § 1, 2005 Tex. Gen. Laws 3932, 3933, in effect at time of the alleged offense.

12

person would exercise under all the circumstances as viewed from the actor's standpoint.

Tex. Penal Code Ann. § 6.03(a) (West 2003).

The amended information upon which appellant was tried provides in pertinent part that appellant, on or about September 14, 2005:

did then and there with criminal negligence interrupt, disrupt, impede and otherwise interfere with a peace officer, namely, Jerome Simpson, while the peace officer was performing a duty and exercising authority imposed and granted by law, to wit: The defendant failed and refused to stop and remain in the officer's presence when specifically told while the officer was in the process of arresting an individual and causing the officer to interrupt the arrest of a detained suspect.

"Criminal negligence depends upon a morally blameworthy failure to appreciate a substantial and unjustifiable risk . . . ." *Williams v. State*, 235 S.W.3d 742, 751 (Tex. Crim. App. 2007). Criminal negligence means that the actor should have been aware of the risk surrounding her or his conduct, but failed to perceive it. *Dowden v. State*, 758 S.W.2d 264, 270 (Tex. Crim. App. 1988); *Ford v. State*, 14 S.W.3d 382, 387 (Tex. App.—Houston [14th Dist.] 2000, no pet.). Thus, criminal negligence involves inattentive risk creation. *Montoga v. State*, 744 S.W.2d 15, 29 (Tex. Crim. App. 1987); *Tello v. State*, 138 S.W.3d 487, 492 (Tex. App.—Houston [14th Dist.] 2004), *aff'd*, 180 S.W.3d 150 (Tex. Crim. App. 2005); *Ford v. State*, 14 S.W.3d 382, 387 (Tex. Crim. App. 2000). The State has to prove that a defendant ought to have been aware of a substantial and unjustifiable risk, not that the defendant was aware of a substantial and unjustifiable risk. *Lopez v. State*, 630 S.W.2d 936, 940 (Tex. Crim. App. 1982); *Tello*, 138 S.W.3d at 492.

The focus of appellant's argument is that the State did not prove the culpable mental state of criminal negligence. She appears to rely solely upon the failure to prove this one element of the offense. Appellant cites only *Duncantell v. State*, 230 S.W.3d 835 (Tex. App.—Houston [1st Dist.] 2007, pet. ref'd), apparently as being factually distinguishable. In *Duncantell*, the convicted defendant invaded the scene of the officer's investigation, interrupted it, and had to be repeatedly ordered to stand back. Appellant contends that she walked in the opposite direction, but she overlooks the officer's order not to leave the scene.

Appellant argues that she was not a party to any offense that the officer may have been investigating, and that other than driving by the scene of the arrest or the detention, appellant had no knowledge of the then-unfolding confrontation. Appellant asserts in her brief that "[t]here was no evidence that appellant recognized the citizen being arrested or the officer making the arrest."

At trial, appellant introduced hospital records of the King's Daughters Hospital where she was treated, on September 14, 2005. These records included appellant's statement to Dr. John Henderson that she had been assaulted by a police officer. In pertinent part Dr. Henderson reported: "She says she got to her house, a police officer had stopped her cousin in front of her house and was talking to her cousin. She said that she did not think much of it, but then pulled into her driveway, got out of her car . . . ." These statements in the hospital's record are somewhat contrary to the assertions in appellant's brief.

We need not reiterate all the facts. Officer Simpson had chased Barrett Gunn to the driveway at 205 Burnet as earlier described. The officer's patrol vehicle was parked on the street at the entrance to the driveway with its flashing overhead lights activated. Officer Simpson had the

14

motorist Gunn out of his car and on the ground at gunpoint. Gunn indicated that he was trying to get to "that" house. There were two small children in Gunn's car and the motor was still running. Before the officer could even search Gunn for weapons, appellant drove past the flashing lights and into the driveway. This distracted the officer, and gave him the impression that there might be a connection between Gunn and appellant. The evidence shows there was. They were cousins, and Gunn and the children were staying at 205 Burnet. The non-testifying appellant did acknowledge in her statement to Dr. Hendrson that Gunn had been stopped and was talking to the officer. Nevertheless, she got out of her vehicle, and according to Officer Simpson, disregarded his order for her to stop and not to move or leave the area. For reasons earlier described, Officer Simpson left Gunn, apparently intoxicated, on the ground and the children unattended in the car, in order to detain appellant. Clearly there was an interference with officer Simpson's duty as alleged. Appellant's statement given at the hospital was that "she did not think much of it."

There was, of course, some conflict in the evidence, but the jury is the exclusive judgment of the credibility of the witnesses and the weight to be given their testimony. *Johnson*, 23 S.W.3d at 7. Reconciliation of conflicts in the evidence falls within the exclusive province of the jury. *Heiselbetz v. State*, 906 S.W.2d 500, 504 (Tex. Crim. App. 1995).

Viewing the evidence in the light most favorable to the jury's verdict, we conclude any rational trier of fact could have found beyond a reasonable doubt all the essential elements, including the culpable mental state of criminal negligence, of the offense of interfering with a peace officer's duties as alleged. The legal sufficiency claim is overruled.

15

## FACTUAL SUFFICIENCY

In the second part of the second point of error appellant raises the contention that the evidence is factually insufficient to sustain her conviction under section 38.15. In her brief appellant states that "[a] review of the evidence demonstrates that proof of appellant's guilt is weak and this Court should have no confidence in the jury's verdict. Any proof of appellant's guilt is outweighed by the record and evidence in this case." This is an obvious reference to a claim of factual insufficiency. Appellant has briefed the second point jointly as to legal and factual insufficiency of the evidence. It is difficult to separate appellant's argument concerning the two claims. It is not pointed out how regarding all the evidence in a neutral light would render the evidence factually insufficient.

We need not restate the evidence, but viewing all of it in a neutral light and applying the standard of review set out in *Roberts*, 220 S.W.3d at 524, we overrule appellant's second part of her second point of error. *See Boyd v. State*, 217 S.W.3d 37, 43 (Tex. App.—Eastland 2006, pet. ref'd); *Key v. State*, 88 S.W.3d 672, 676-77 (Tex. App.—Tyler 2002, pet. ref'd).

The judgment is affirmed.

16

_____

John F. Onion, Jr., Justice

Before Chief Justice Jones, Justices Pemberton and Onion*

Affirmed

Filed:   July 10, 2009

Do Not Publish

*  Before John F. Onion, Jr., Presiding Judge (retired), Texas Court of Criminal Appeals, sitting by assignment.  *See* Tex. Gov't Code Ann. § 74.003(b) (West 2005).

17