Reversed and Rendered; Majority and Dissenting Opinions filed June 2, 2011.

 

In
The

Fourteenth
Court of Appeals



NO. 14-09-00887-CR



Jeri Dawn
Montgomery, Appellant 

v.

The State of
Texas, Appellee 



On Appeal from
the 337th District Court

Harris County, Texas

Trial Court
Cause No. 1182462



 

DISSENTING OPINION

            The
majority contends the evidence presented at trial is insufficient to sustain appellant’s
conviction for criminally negligent homicide because the State offered no
evidence to show: (1) an increased risk of traffic deaths due to cell phone
usage; and (2) that such risk, if any, is generally known and disapproved of in
the community.  While the majority may well wish for such evidence, neither of
the above factors is an element of the offense.  Thus, the State had no
obligation to offer such proof.  Accordingly, I dissent.

            The
elements of criminally negligent homicide are simply: (1) a person; (2) causes
the death; (3) of an individual; (4) by criminal negligence.  Juneau v.
State, 49 S.W.3d 387, 391 (Tex. App.—Fort Worth 2000, pet. ref’d); see
also Tex. Penal Code Ann.
§ 19.05 (West 2003); Tello v. State, 138 S.W.3d 487, 492 (Tex.
App.—Houston [14th Dist.] 2004), aff’d, 180 S.W.3d 150 (Tex.
Crim. App. 2005).  Here, the first three elements are not in dispute.  Appellant
contends only that when she caused the death of the victim, she did so without
the requisite culpable mental state of “criminal negligence.”

            Criminal
negligence has two components: (1) engaging in conduct that creates a substantial
and unjustifiable risk to another; and (2) the actor’s failure to perceive the
risk is a gross deviation from the ordinary standard of care.  See Tex. Penal Code Ann. § 6.03(d) (West
2003); Tello, 180 S.W.3d at 156.

A.    
Increased risk of traffic deaths due to
cell phone usage

“A
person acts with criminal negligence . . . with respect to circumstances
surrounding his conduct . . . when he ought to be aware of a substantial and
unjustifiable risk.”  Tex. Penal Code
Ann. § 6.03(d).  Thus, the majority contends the State was obliged to
show that cell phone use while driving poses a risk to others.  However, the
State never alleged that cell phone use constitutes a risk to others; rather,
the State alleged in its indictment that appellant’s risky conduct was: (1)
failing to maintain a proper lookout; and (2) making an unsafe lane change.  It
would seem to be common knowledge that driving while failing to keep a proper
lookout constitutes an extreme risk to others.  Hypothetically, circumstances
showing a driver failed to maintain a proper lookout might include evidence
that he or she was: (1) legally blind; (2) driving without corrective lenses;
(3) reading a book, map, or directions; (4) asleep or fatigued; (5) browsing
the Internet; (6) applying cosmetic makeup; (7) day-dreaming; (8)
rubbernecking; (9) looking at scenery or landmarks; or (10) eating, drinking,
or searching the vehicle for a snack.  Here, the State attempted to show
appellant failed to maintain a proper lookout because she was distracted by her
use of a cell phone.

Thus,
contrary to the majority’s assertion, the State had no burden to show that
driving while using a cell phone is always distracting, commonly dangerous,
generally risky, or causes increased traffic deaths.  The State had only to
show that in this case, under these circumstances, appellant’s use of a
cell phone was distracting, dangerous, and risky because it prevented her from
maintaining a proper lookout.  Here, the record shows appellant was talking on
her cell phone at the time of the accident.[1] 
Further, she admitted she was distracted by her use of the cell phone.  Due
to this distraction, appellant moved suddenly out of the center lane of the
access road, at night, in poor visibility, without signaling, without looking
for other vehicles traveling in the inside lane, and attempted to turn onto a
freeway ramp contrary to traffic control stripes on the pavement.

Accordingly,
I would find the State offered significant evidence that appellant was
distracted by her use of a cell phone, that the distraction interfered with her
ability to maintain a proper lookout and make a safe lane change, and that she
ought to have been aware that her unsafe lane change and failure to keep a
proper lookout created a substantial and unjustifiable risk.

B.     The
risk of talking on a cell phone while driving is generally known and
disapproved of in the community

For
conduct to rise to the level of criminal negligence, “[t]he risk must be of
such a nature and degree that the failure to perceive it constitutes a gross
deviation from the standard of care that an ordinary person would exercise
under all the circumstances as viewed from the actor’s standpoint.”  Tex. Penal Code Ann. § 6.03(d).  Thus,
the essence of criminal negligence is the failure of the actor to perceive the risk
created by his or her conduct.  Mendieta v. State, 706 S.W.2d 651, 652
(Tex. Crim. App. 1986).

The
use of cell phones by drivers is pervasive.  According to the National Highway Traffic
Safety Administration, “At any given moment during the daylight hours, over
800,000 vehicles are being driven by someone using a hand-held cell phone.”[2]  The
majority considers the interesting issue of whether any conduct can be a “gross
deviation” from the ordinary standard of care when it is engaged in by such a
significant segment of the population.  In their analysis, the majority relies on
the rationale of the Tennessee Supreme Court in State v. Jones, 151
S.W.3d 494 (Tenn. 2004).

            Because
40% of children transported in vehicles in Tennessee are not placed in proper
child restraints, the Tennessee court concluded that a person’s failure to
properly restrain a child in a motor vehicle simply cannot constitute a “gross
deviation from the standard of care.”  Id. at 501.  Thus, if enough
people are grossly negligent on a routine basis, their conduct, by definition,
cannot be grossly negligent.  I disagree.

First,
the negligent conduct in this case constituting a “gross deviation” from the
ordinary standard of care was not talking on a cell phone—it was failing
to maintain a proper lookout and making an unsafe lane change.  Thus, while appellant’s
use of a cell phone, under the circumstances presented here, may have led to
her failure to maintain a proper lookout and making an unsafe lane change, the
State was under no obligation to prove that talking on a cell phone generally
constitutes a “gross deviation” from the ordinary standard of care or is
generally disapproved of in the community.

Second,
whether an actor’s conduct constitutes a gross deviation from the standard of
care that would be exercised by an ordinary person in the same circumstances
constitutes a question of fact to be resolved by the fact finder.  Phillips
v. State, 588 S.W.2d 378, 381 (Tex. Crim. App. 1979).  Here, the jury was
never asked to conclude whether the use of a cell phone while driving is unsafe
under all circumstances and conditions.  An alert driver, traveling in light
traffic, on a rural road, in good weather, and in daylight conditions, may well
be able to conduct a conversation without distraction and maintain a proper
lookout while observing all traffic signs and statutes.  Here, however, the
jury concluded that appellant’s failure to perceive the risk created by not maintaining
a proper lookout and making of an unsafe lane change constituted a gross
deviation from the ordinary standard of care.  Appellant’s use of a cell phone,
under the facts and circumstances presented in this case, undoubtedly
contributed to her failure to keep a lookout and unsafe lane change.

Finally,
“the actor’s conduct is weighed against an objective standard, that of the
ordinary prudent man.”  Tompkins v. State, 774 S.W.2d 195, 225 (Tex. Crim.
App. 1987).  What an ordinary prudent person would do is not the same standard
as what people do generally.  For example, when asked, most cigarette smokers
will readily concede that smoking is dangerous and imprudent.  However, by
definition, 100% of all cigarette smokers smoke.  Likewise, although a significant
number of drivers use cell phones while driving,[3]
one recent study revealed that more than 80% of drivers believed using a cell
phone while driving was dangerous,[4]
and another study revealed that more than 80% of drivers believed it was a serious
problem.[5] 
Even in 2003, the National Highway Traffic Safety Administration reported that
seven in ten drivers believed making a phone call made driving more dangerous.[6]  It is
simply a sad fact of the human condition that each of us seems to believe “I
can beat the odds.”  Thus, what is a gross deviation of care for you is not a
gross deviation of care for me.

Accordingly,
even if it could be shown that 100% of Texas drivers routinely drive while
distracted due to cell phone use, such fact would not prevent twelve jurors
from reasonably and rationally concluding that no ordinary prudent
person would drive while distracted due to cell phone use.

C.    
Conclusion

The
majority imposes burdens upon the State not supported by law.  Because the
State presented abundant evidence that appellant’s failure to perceive the
substantial and unjustifiable risk created by her distracted driving—which led
to her failure to maintain a proper lookout and making an unsafe lane change—constituted
a gross deviation from the ordinary standard of care, I would affirm the
conviction.

                                                                                                                                                                                                                                                                                                                                

                                                                        /s/        J.
Harvey Hudson

                                                                                    Senior
Justice

 

 

Panel consists of Chief
Justice Hedges, Justice Jamison, and Senior Justice Hudson.[7] (Jamison,
J. majority)

Publish — Tex. R. App. P. 47.2(b).

 









[1]
The majority asserts appellant ended her cell phone conversation before the
accident occurred.  However, Ronald Soots, an accident investigator with the
Harris County Sheriff’s Office, testified, “The cell phone showed—the records
show that she was on the phone at or around the time of the crash.”  Reviewing
the evidence in the light most favorable to the verdict, as we must, the jury
was entitled to conclude that appellant was on the phone at the time of the
accident.  See Isassi v. State, 330 S.W.3d 633, 638 (Tex. Crim.
App. 2010); Williams v. State, 235 S.W.3d 742, 750 (Tex. Crim. App.
2007).





[2] Policy
Statement and Compiled FAQs on Distracted Driving, U.S. Dep’t of Transp., Nat’l Highway Traffic Safety Admin., http://www.nhtsa.gov/Driving+Safety/Distracted+Driving/Policy+
Statement+and+Compiled+FAQs+on+Distracted+Driving (last visited May 4, 2011); see
also U.S. Dep’t of Transp., Nat’l
Highway Traffic Safety Admin., DOT HS 811 184, Driver Electronic
Device Use in 2008, at 1 (Sept. 2009), available at http://www-nrd.nhtsa.dot.gov/pubs/811184.pdf
(estimating that drivers in 11% of all vehicles use some type of cell phone at
any given time during daylight hours).





[3]
See AAA Found. for Traffic
Safety, Cell Phones and Driving: Research Update 8 (Dec. 2008), available
at http://www.aaafoundation.org/pdf/CellPhonesandDrivingReport.pdf (reporting
the results of two surveys in which 53% and 61% of respondents admitted to
talking on a cell phone while driving in the preceding thirty days); Dawn Royal, The Gallup Org., National Survey
of Distracted and Drowsy Driving Attitudes and Behaviors: 2002, at 20,
32 (Mar. 2003), available at http://www.nhtsa.gov/people/injury/drowsy_driving1/distracted03/DISTRACTEDFINALFINDINGS%
20REPORT.pdf (reporting that “about one in three of all drivers [use] a cell
phone for outgoing or incoming calls while driving,” and “about one in four
drivers drive while talking on a wireless phone”); see also Humphrey Taylor, Harris Interactive, Large Majority of
Drivers Who Own Cell Phones Use Them While Driving Even Though They Know This
Is Dangerous 2 (The Harris Poll No. 58, June 8, 2009), available at http://www.harrisinteractive.com/vault/Harris-Interactive-Poll-Research-Safe-Driving-2009-06.pdf
(noting that 73% of drivers who owned a cell phone admitted in 2006 to talking
on a cell phone while driving).





[4]
Taylor, supra, at 4.





[5]
AAA Found. for Traffic Safety, supra,
at 11.  This study also noted that driving while talking on a cell phone “rated
above aggressive drivers, excessive speeding, and drivers running red lights in
terms of public perceptions of their seriousness.”  Id.





[6]
Royal, supra, at 32.





[7]
Senior Justice J. Harvey Hudson sitting by assignment.